**Sparrow v. PACE/CM, Inc.**

C.P. of Lackawanna County, no. 10 CV 5086.

8

*Howard M. Levinson,* for plaintiff.

*Terrence J. McDonald* and *Brian J. Cali,* for defendants.

NEALON, *J.,* February 7, 2011—The defendants in this commercial litigation which has been instituted by a construction subcontractor have presented seven demurrers contesting the legal sufficiency of various claims set forth in the amended complaint, four additional preliminary objections challenging other averments on the grounds of insufficient specificity, and one additional objection based upon Pa. R.C.P. 1019(i). For the reasons set forth below, the demurrers of one construction project owner, RGMOB, L.P., will be sustained since: (1) no contractual relationship existed between the owner and the subcontractor; (2) the single entity theory for piercing the corporate veil is not recognized in Pennsylvania and the alter ego theory of liability is inapplicable based upon the facts averred in the amended complaint; and (3) the alleged enrichment of the owner was not "unjust" in that the subcontractor has not alleged that the owner misled him into providing a benefit. Based upon the gist of the action doctrine, the demurrers to the subcontractor's claims for tortious interference with existing and prospective contractual relations will be sustained, and as a consequence of the dismissal of those only tort claims, the subcontractor's claims for punitive damages will also be stricken. However, the general contractor's demurrer to the subcontractor's parking garage project claim will be overruled. Additionally, with the exception of those allegations premised upon the single entity or alter ego theories, the preliminary objections on the grounds of insufficient specificity will be overruled. Finally, the

objection asserting a failure to attach certain documents to the amended complaint pursuant to Rule 1019(i) will likewise be overruled.

## I. FACTUAL BACKGROUND

This civil action stems from services and materials that plaintiff Joseph Sparrow, Jr. d/b/a J. Sparrow Excavating ("Sparrow") allegedly provided pursuant to subcontract agreements with defendant PACE/CM, Inc. d/b/a PACE Construction Managers, Inc. ("PACE") in connection with three construction projects: (1) the Roberta Glinton Medical Office Building, lower parking lot and pedestrian bridge projects in Port Jervis, NY ("Port Jervis projects"); (2) the Tobyhanna State Park Area and Campground project ("Tobyhanna project"); and (3) the Rickets Glen State Park Development project ("Rickets Glen project"). Sparrow also asserts claims based upon a subcontract agreement that Sparrow had with PACE relative to the Washington Avenue and Spruce Street parking facility project ("Washington/Spruce project"), for which Sparrow's services were never utilized as allegedly promised (plaintiff's amended complaint, ¶¶1, 3, 22-23).

In his amended complaint, Sparrow contends that defendant RGMOB, L.P. ("RGMOB") was the owner of the Roberta Glinton Medical Office Building, parking lot and pedestrian bridge which were the subjects of the Port Jervis projects (*Id.*, ¶¶5-6, 41). Sparrow avers that PACE and RGMOB are integrated companies with common ownership, addresses, officers and control such that the two companies operate as a single entity (*Id.*, ¶¶7-8, 12-13, 41-42, 58). Specifically, Sparrow maintains that defendant Robert W. Pettinato ("Pettinato") is an owner and officer

10

of PACE and the president of Hal Holdings, Inc. which is the corporate general partner of RGMOB (*Id.*, ¶¶10, 12, 41). Pettinato's daughter, defendant Natalie Pettinato O'Hara ("O'Hara"), is also allegedly an officer and owner of PACE and RGMOB (*Id.*, ¶¶11-12). Consequently, Sparrow submits that RGMOB is the alter ego of PACE and vice-versa, as a result of which RGMOB and PACE are both deemed to be owners and contractors relative to the Port Jervis projects (*Id.*, ¶¶43-45).

Sparrow contends that upon completing specified work, he submitted monthly applications and certificates for payment to PACE in conjunction with the Port Jervis, Tobyhanna and Rickets Glen projects, but PACE either delayed or withheld payments even though it had already received funds from the owners of each project (*Id.*, ¶¶25-26, 46-54, 65-72, 81-88, 90-92). Sparrow asserts that payments were intentionally withheld from him in order to leverage Sparrow to perform additional work beyond the scope of the subcontracts (*Id.*, ¶¶26-28). According to Sparrow, he is owed $102,827.15 on the Port Jervis projects, $168,505.94 on the Tobyhanna project and $336,407.04 on the Rickets Glen project (*Id.*, ¶¶55-57, 59-62, 73-77, 89, 93).

Sparrow submits that as a result of his failure to receive timely payments and his corresponding inability to pay his own vendors and workers for those projects, he "was forced to enter into certain memoranda of understanding and/or joint check agreements, whereby PACE was to submit payments to certain of Sparrow's vendors, suppliers and laborers" for the foregoing projects[1] (*Id.*,

_____
1. As commonly used in the construction industry, a joint check

¶31). The execution of the memoranda of understanding and joint check agreements enabled PACE to invoke a provision of the subcontract agreements authorizing it to assess Sparrow a service charge of 25% on all amounts that PACE paid to his vendors, suppliers or laborers (*Id.*, ¶¶35-36). Sparrow alleges that PACE did not pay Sparrow's vendors as promised, but nevertheless charged Sparrow a fee of 25% on amounts that PACE had falsely represented were paid (*Id.*, ¶37, 63-64, 78-80, 95-96).

With regard to the Washington/Spruce project, Sparrow contends that after the Scranton Parking Authority retained PACE as the general contractor for that project, PACE entered into a subcontract agreement with Sparrow in the amount of $249,000.00 to perform certain work "when notified to do so by PACE" (*Id.*, ¶¶97-105). Sparrow asserts that although he invested considerable time and expense to prepare for that project, PACE failed to notify Sparrow to perform his work and instead utilized the services of other subcontractors (*Id.*, ¶¶106-108). Sparrow claims that PACE wrongfully terminated the subcontract agreement and seeks damages for lost revenue and his time and expense related to pricing, budgeting and planning for that project (*Id.*, ¶¶109-111).

The first ten counts of Sparrow's amended complaint concern the Port Jervis projects and set forth causes

arrangement provides that the general contractor will issue progress payments to the subcontractor and its material suppliers. *Glen-Gery Corp. v. Warfel Construction Company*, 734 A.2d 926, 929 (Pa. Super. 1999). The general contractor may request a joint check agreement with the subcontractor since "the general contractor reduces the chances that his subcontractor will pocket the money and leave the suppliers unpaid, thus provoking the suppliers to file mechanic's liens or make claims against the general contractor's payment bond." *Id.* (quoting *City of Philadelphia v. Allied Roofers Supply Corp.*, 599 A.2d 222, 226 (Pa. Super. 1990)).

of action against PACE, RGMOB and defendant International Fidelity Insurance Company ("IFIC") which issued a labor and material payment bond to PACE for the Port Jervis projects. Sparrow asserts claims against PACE for breach of contract (count I), quantum meruit (count II), unjust enrichment (count III), account stated (count IV), and violations of the Contractor and Subcontractor Payment Act ("CASPA"), 73 P.S. §§501-516 (count V). RGMOB has been sued for breach of contract (count VI), quantum meruit (count VII), unjust enrichment (count VIII) and violation of CASPA (count IX). Count X names IFIC as a defendant in its capacity as the surety and alleges breach of contract liability based upon the actions of PACE.

Counts XI through XVI of the amended complaint relate to the Tobyhanna project and aver claims against PACE for breach of contract (count XI), quantum meruit (count XII), unjust enrichment (XIII), account stated (count XIV) and violation of the commonwealth procurement code, 62 Pa. C.S.A. §§101-4604 (count XV), and IFIC for breach of contract (count XVI) based upon the payment bond that it issued to PACE for the Tobyhanna project. Counts XVII to XXII contain comparable causes of action with respect to the Rickets Glen project and advance claims against PACE for breach of contract (XVII), quantum meruit (XVIII), unjust enrichment (XIX), account stated (XX), and violation of the commonwealth procurement code (Count XXI), and IFIC for breach of contract (XXII) as the project surety for PACE. The Washington/Spruce project is the subject of Count XXIII of the amended complaint in which a breach of contract claim is asserted against PACE only.

Counts XXIV and XXV set forth the only tort claims and allege liability for tortious interference with existing and prospective contractual or business relations. In Count XXIV, Sparrow contends that PACE was aware of Sparrow's contractual relationships with nine vendors and caused his business relations with them to be harmed by failing to timely pay Sparrow so that he, in turn, could "meet his obligations...to those companies." Sparrow further avers that PACE "misrepresented that it made certain payments to" those companies when "PACE knew that it never made such payments," and that certain vendors "who previously enjoyed a profitable business relationship with Sparrow, have since filed civil actions" against him (plaintiff's Amended Complaint, ¶¶261-273). In the sole Count containing claims against Pettinato and O'Hara in their individual capacities, Count XXV of the amended complaint asserts liability for tortious interference with existing and prospective contractual or business relations based upon similar allegations of nonpayment and misrepresentation (*Id.*, ¶¶274-288).

Defendants originally filed preliminary objections comprised of eleven demurrers pursuant to Pa. R.C.P. 1028(a)(4) and eight challenges asserting insufficient specificity of various allegations under Pa. R.C.P. 1028(a)(3). The demurrers contest the legal sufficiency of: (1) all claims against RGMOB; (2) the tortious interference with existing or prospective business relations claims due to (a) the "gist of the action" doctrine and (b) the presence of "privilege" or "justification" on the part of PACE, Pettinato and O'Hara; (3) individual liability of Pettinato and O'Hara; (4) illusory contracts between PACE and Sparrow; (5) punitive damages claims; (6)

claims for counsel fees; (7) causes of action for fraud/misrepresentation; (8) IFIC's liability under CASPA; (9) PACE's liability as an "owner" of the projects; and (10) the breach of contract claim against PACE with respect to the Washington/Spruce project (defendants' preliminary objections, ¶¶12-143).

As per Rule 1028(a)(3), the defendants also challenge the adequacy of Sparrow's averments relating to: (1) to "defendants" generally without specifying which named defendants are being referenced; (2) PACE as an "owner" and RGMOB as a "general contractor"; (3) illusory contracts; (4) additional work and its cost; (5) "open ended" claims for damages; and (6) fraud/misrepresentation. Based upon Pa. R.C.P. 1019(i), the defendants further attack Sparrow's failure to attach to his pleading the relevant memoranda of understanding/joint check agreements and IFIC's surety bonds for the Port Jervis, Tobyhanna and Rickets Glen projects (*Id.*, ¶¶146-207).

At the time of oral argument on January 20, 2011, Sparrow confirmed that he is not alleging that the PACE-Sparrow contracts are illusory, nor is he advancing claims for fraud and misrepresentation. Therefore, the four preliminary objections regarding illusory contracts and fraud/misrepresentation claims have been rendered moot. Sparrow also agreed that he is seeking counsel fees only under CASPA and the commonwealth procurement code, and has withdrawn his request for counsel fees in all other respects. Finally, counsel for the parties agreed to exchange the relevant surety bonds and to thereafter reach a stipulation with respect to any claims against IFIC under CASPA and the Pennsylvania Prompt Pay Act, 62 Pa.C.S.A. §§3931-3939, which is a chapter of the

commonwealth procurement code (docket entry nos. 22-23).

Based upon the parties' foregoing stipulations, seven demurrers, four insufficient specificity objections and one Rule 1019(i) challenge remain to be addressed. Following Sparrow's submission of his supplemental memorandum of law on January 24, 2011, the preliminary objections became ripe for resolution.

## II. DISCUSSION

### (A) *STANDARDS OF REVIEW*

A preliminary objection in the nature of a demurrer is properly granted where the contested pleading is legally insufficient. *Jones v. Nationwide Property and Cas. Ins. Co.*, 995 A.2d 1233, 1237 (Pa. Super. 2010). In making that determination, all material facts set forth in the challenged pleading and all inferences reasonably deducible therefrom are accepted as true. *Foster v. UPMC South Side Hospital*, 2 A.3d 655, 662 (Pa. Super. 2010). Preliminary objections may be sustained only in cases that are clear and free from doubt, and to be deemed clear and free from doubt, "it must appear with certainty that the law would not permit recovery by the plaintiff upon the facts averred." *Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania*, 7 A.3d 278, 282-283 (Pa. Super. 2010).

Defendants also raise preliminary objections pursuant to Pa. R.C.P. 1028(a)(3) and seek to strike certain averments on the grounds of insufficient specificity. The purpose of a complaint is to place the defendant on notice of the claims upon which [s]he will have to defend. *Carlson v. Community Ambulance Services, Inc.*, 824 A.2d 1228,

1232 (Pa. Super. 2003); *Lavelle Murray v. Haggerty*, 2 D. & C. 5th 338, 346-347 (Lacka. Co. 2006); *Mulderig v. Allstate Insurance Company*, 105 Lacka, Jur. 1, 8 (2003). "Under Pennsylvania's fact pleading system, the complainant need only state the material facts upon which a cause of action is based." *Grossman v. Barke*, 868 A.2d 561, 569 (Pa. Super. 2005), *app. denied*, 585 Pa. 697, 889 A.2d 89 (2005); *Lavelle Murray*, 2 D. & C. 5th at 347.

"To determine if a pleading is sufficiently specific, a court must ascertain whether the facts alleged are sufficiently specific to enable a defendant to prepare his defense." *Unified Sportsmen of Pennsylvania v. Pennsylvania Game Commission*, 950 A.2d 1120, 1134 (Pa. Cmwlth. 2008). Accord, *Rambo v. Greene*, 906 A.2d 1232, 1236 (Pa. Super. 2006). When considering whether the allegations of the complaint have been stated with adequate specificity, one portion of the complaint should not be examined in isolation and should instead "be read in context with all other allegations in that complaint." *Rachlin v. Edmison*, 813 A.2d 862, 870 (Pa. Super. 2002); *Yacoub v. Lehigh Valley Medical Associates*, 805 A.2d 579, 589 (Pa. Super. 2003), app. denied, 573 Pa. 692, 825 A.2d 639 (2003); *Mulderig*, supra. "Only then can the court determine whether the defendant has been put upon adequate notice of the claim against which [s]he must defend." *Grossman*, 868 A.2d at 569; *Lavelle Murray*, supra.

## (B) *RGMOB LIABILITY*

RGMOB contends that it cannot be liable to Sparrow for breach of contract, quantum meruit/unjust enrichment or violation of CASPA since: (1) no contractual

relationship existed between Sparrow and RGMOB; (2) RGMOB would not be "unjustly" enriched if it retained the benefit of any work performed by Sparrow on the Port Jervis projects; and (3) RGMOB was not a "contractor" for the Port Jervis projects, as required for liability under the CASPA (defendants' preliminary objections, ¶¶12-37). In response, Sparrow acknowledges that no privity of contract existed between RGMOB and Sparrow, but asserts that RGMOB may be held accountable for the actions of PACE relative to the Port Jervis projects inasmuch as RGMOB and PACE "share common/interlocking directorates and have unified interests and a common address such that these companies are, for all intents and purposes, one and the same entity or an 'alter ego'" (plaintiff's Brief in Opposition, p. 8).

A party may seek to pierce the corporate veil of an entity based upon an "alter ego" theory or a "single entity" theory. The alter ego theory "is applicable only where the individual or corporate owner controls the corporation to be pierced and the controlling owner is to be held liable." *Miners, Inc. v. Alpine Equipment Corp.*, 722 A.2d 691, 695 (Pa. Super. 1998), app. denied, 560 Pa. 728, 745 A.2d 1223 (1999) (italics in original). Under the single entity or "enterprise entity" theory, the corporate veil may be pierced whenever two or more corporations share common ownership and, in actuality, operate as a single enterprise. *Advanced Telephone Systems, Inc. v. Com-Net Professional Mobil Radio, LLC*, 846 A.2d 1264, 1278 n. 9 (Pa. Super. 2004), app. denied, 580 Pa. 687, 859 A.2d 767 (2004); *Bouriez v. Carnegie Mellon University*, 2005 WL 3006831 at *19(W.D. Pa. 2005). However, the single entity or enterprise entity theory of liability has not been

18

adopted in Pennsylvania.[2] *Advanced Telephone Systems, Inc.*, supra; *Miners, Inc.*, supra; *Bouriez*, supra; *E-time System, Inc. v. Voicestream Wireless Corp.*, 2002 WL 1917697 at *12 (E.D.Pa. 2002).

Sparrow asserts that by virtue of their common ownership, address, and directors, (plaintiff's amended complaint, ¶¶7-8, 12,41-42, 58), PACE and RGMOB "operate as just one (1) entity with shared and common interests instead of two (2) distinct entities" (*Id.*, ¶13). In the process, Sparrow seeks to impose liability upon RGMOB for the actions of PACE based upon the single entity theory rather than the alter ego theory. However, as the Superior Court of Pennsylvania has explained:

> [Alter ego liability] is quite distinct from the situation where two or more corporations share common ownership and are, in reality, operating as a corporate combine. This latter theory has been labeled the enterprise entity theory or the single entity theory, [citations omitted]. The [trial] court seemingly applied the single entity theory of piercing the corporate veil. Under that theory, two or more corporations are treated as one because of identity of ownership, unified administrative control, similar or supplementary business functions, involuntarily creditors, and insolvency of the corporation against which the claim lies. [citation omitted]. That theory, however, has yet to be adopted in Pennsylvania. *Miners, Inc.*, 722 A.2d

---

2. Relying upon federal statutory law, federal courts in Pennsylvania have applied the single entity theory in employment discrimination cases. See e.g., *Gupta v. Sears, Roebuck & Co.*, 2009 WL 890585 at * 2 (W.D. Pa. 2009); *Ziealer v. Delaware Co. Daily Times*, 128 F. Supp. 2d 790, 795 (E.D. Pa. 2001).

at 695 (reasoning that although piercing the corporate veil under the single entity theory would make another corporation liable, piercing under the alter ego theory would render the entity's stockholders personally liable for the corporation's debts).

Since Pennsylvania does not recognize the single entity theory, it cannot serve as a basis for holding RGMOB liable for PACE's breach of any contractual duties.

The alter ego theory cited by Sparrow similarly fails to provide grounds for imposing liability upon RGMOB for PACE's contractual obligations. As noted above, the alter ego theory is available whenever the individual or corporate owner controls the corporation to be pierced and the plaintiff seeks to hold the owner liable for the corporation's debt. *Advanced Telephone Systems, Inc.,* 846 A.2d at 1278; *Good v. Holstein,* 787 A.2d 426, 430 (Pa. Super. 2001), *app. denied,* 568 Pa. 738, 798 A.2d 1290 (2002). In that event, the owner is deemed liable because the corporation is not a bona fide independent entity and instead is merely an alter ego of the owner. See, *Nordi v. Keystone Health Plan West, Inc.,* 989 A.2d 376, 384 (Pa. Super. 2010); *Parker Oil Company v. Mico Petro & Heating Oil, LLC,* 979 A.2d 854, 859 (Pa. Super. 2009). Instantly, Sparrow alleges that Pettinato and O'Hara are the owners of RGMOB, not that PACE is the corporate owner of RGMOB (plaintiff's amended complaint, ¶¶10-12, 41). While the alter ego theory may conceivably be employed to make Pettinato and O'Hara individually liable for PACE's contractual breach, it may not be used to impose comparable liability upon RGMOB based upon the facts alleged in the amended complaint. Thus, in light of the inapplicability of either the single entity or alter ego

20

theory of liability, RGMOB cannot be liable to Sparrow for breach of contract and its demurrer to count VI of the amended complaint will be sustained.

In Counts VII and VIII of the amended complaint, Sparrow asserts independent causes of action for quantum meruit and unjust enrichment against RGMOB (plaintiff's amended complaint, ¶¶153-161). "Quantum meruit is an equitable remedy to provide restitution for unjust enrichment in the amount of the reasonable value of services." *American and Foreign Insurance Company v. Jerry's Sport Center, Inc.,* 2 A.3d 526, 532 n. 8 (Pa. 2010). In Pennsylvania, "[u]njust enrichment is a synonym for quantum meruit." *Northeast Fence & Iron Works, Inc., v. Murphy Quigley Co., Inc.,* 933 A.2d 664, 667 (Pa. Super. 2007), *app. denied,* 596 Pa. 755, 947 A.2d 737 (2008). Accord, *Goldsmith Associates, Inc. v. Del Frisco's Restaurant Group, LLC,* 2009 WL 3172752 at * 2 (E.D.Pa. 2009) ("Goldsmith's amended complaint asserts claims against the defendants under counts separately labeled "unjust enrichment" and "quantum meruit." In Pennsylvania, however, these labels are synonyms: a claim for unjust enrichment is the same as a claim in quantum meruit."); *Lustfield v. Milne,* 5 D & C. 5th 469, 486 (Alleg. Co. 2008) ("count VI is labeled quantum meruit and count VII is labeled unjust enrichment. However, unjust enrichment is a synonym for quantum meruit. [citation omitted]. Consequently, I look to the case law governing claims for unjust enrichment.").

In his supplemental memorandum of law, Sparrow states that count VII labeled "quantum meruit" is intended to assert a claim against RGMOB based upon a contract "implied in fact." A contract implied in fact "arises where

the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from their acts in the light of the surrounding circumstances." *Rissi v. Cappella*, 918 A.2d 131, 140 (Pa. Super. 2007); *DTK Ventures, L.P. v. Russo*, 2006 WL 2988463 at *4 (Lacka. Co. 2006). Since RGMOB and Sparrow never agreed upon any obligations to be incurred, nor did they have any direct dealings or negotiations, Sparrow premises his quantum meruit/breach of contract implied in fact claim upon the same single entity and alter ego theories of liability which he advanced in relation to his breach of contract claim. However, for the reasons stated above, those theories of liability are inapplicable and insufficient as a matter of law to support Sparrow's quantum meruit/breach of contract implied in fact claim. As a result, RGMOB's demurrer to count VII of the amended complaint will be sustained.

The doctrine of unjust enrichment "imposes a duty, not as a result of any agreement, whether expressed or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." *Stoeckinger v. Presidential Financial Corp. of Delaware Valley*, 948 A.2d 828, 833 (Pa. Super. 2008). The elements of unjust enrichment are "benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Safe Auto Insurance Company v. Berlin*, 991 A.2d 327, 336 n. 6 (Pa. Super. 2010); *DTK Ventures, L.P.*, supra at *7. The most significant element of the doctrine is whether the enrichment of the defendant is unjust. *Berlin*, supra;

*Northeast Fence & Iron Works, Inc.*, 933 A.2d at 669. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiffs. *Ira G. Steffy & Son, Inc.*, 7 A.3d at 284; *Stoeckinger*. supra.

The appellate courts in Pennsylvania have specifically addressed the principle of unjust enrichment in cases where a subcontractor has provided services or materials to an owner who had no direct contractual relationship with the subcontractor. In those instances where no direct contractual relationship exists between the owner and the subcontractor, "the owner's retention of the benefit without paying any compensation to the subcontractor would not be unjust if the owner did not contract directly with or mislead the subcontractor." *D. A. Hill Co. v. Clevetrust Realty Investors*, 524 Pa. 425, 432, 573 A.2d 1005,1009 (1990) (citing *Meehan v. Cheltenham Township*, 410 Pa. 446, 450-451, 189 A.2d 593, 596 (1963)). See also, *Limbach Company, LLC v. City of Philadelphia*, 905 A.2d 567, 577 (Pa. Cmwlth. 2006) ("*Meehan* and *D.A. Hill* teach us that where a third party benefits from a contract entered into between two other parties, the third party's retention of the benefit without paying any compensation to the aggrieved contracting party will not be unjust if the party enjoying the benefit did not mislead the subcontractor."); *EBC Inc. v. Clark Building Systems, Inc.*, 618 F.3d 253, 275 n.25 (3rd Cir. 2010) ("An unjust enrichment claim in Pennsylvania is still viable in this context if the owner misled the subcontractor into providing a benefit.").

Relying upon the single entity theory of liability, Sparrow has averred that "because RGMOB and PACE are related entities and their interests are aligned, Sparrow has effectively contracted directly with RGMOB" (Plaintiff's

amended complaint, ¶142). As noted above, the single entity theory is not cognizable in this commonwealth and cannot create a contractual relationship between RGMOB and Sparrow. Sparrow has not alleged in court VIII of the amended complaint that RGMOB misled Sparrow or directly contracted with him (*Id.*, ¶¶157-161). Absent such an averment which is necessary to establish that a particular enrichment is "unjust" under D.A. Hill Company, Sparrow has failed to state a claim for unjust enrichment against RGMOB. See, *Ira G. Steffy & Son, Inc.*, 7 A.3d at 285 (finding that enrichment was not unjust since subcontractor "did not plead facts showing that... it had either the requisite contractual relationship with [the owner] or was misled by [the owner]."). As such, RGMOB's demurrer to count VIII (unjust enrichment) will be sustained.[3]

In his final claim against RGMOB, Sparrow asserts liability based upon CASPA. CASPA was enacted in 1994 "to protect contractors and subcontractors and to encourage fair dealing among parties to a construction contract." *Zimmerman v. Harrisburg Fudd I, L.P.*, 984 A.2d 497, 500-501 (Pa. Super. 2009), *app. denied*, 992 A.2d 890 (Pa. 2010). To that end, Section 504 of the Act affords protection to subcontractors such as Sparrow and states that "[p]erformance by...a subcontractor in accordance with the provisions of a contract shall entitle the...subcontractor to payment from the party with whom the...subcontractor has contracted." 73 P.S. §504 (italics

---

3. It bears noting that Sparrow has distinctly averred that PACE failed to pay Sparrow for services provided on the Port Jervis projects even though PACE had already received payment from RGMOB pursuant to the RGMOB-PACE general contract (plaintiff's amended complaint, ¶¶26, 59, 63).

added). Section 507 of CASPA similarly provides that "[p]erformance by a subcontractor in accordance with the provisions of the contract shall entitle the subcontractor to payment from the party with whom the subcontractor has contracted." 73 P.S. §507(a). By their plain language, Sections 504 and 507 furnish a basis for Sparrow's claims against the general contractor, PACE, but do not provide a subcontractor with a statutory remedy against the project owner.

Due to the lack of contractual privity between the subcontractor, Sparrow, and the owner, RGMOB, Sparrow attempts to assert a claim pursuant to Section 505(a) of CASPA (plaintiff's amended complaint, ¶¶166), which states that "[t]he owner shall pay the contractor strictly in accordance with terms of the construction contract." 73 P.S. §505(a). Once again, relying upon the single entity theory, Sparrow avers that "RGMOB and PACE are related entities, not separate and distinct," as a result of which "RGMOB is an owner and Sparrow is the contractor as such terms are defined in the Contractor and Subcontractor Payment Act, 73 P.S. §502" (plaintiff's amended complaint, ¶¶163, 165). An unrecognized theory of liability cannot operate to convert Sparrow from a subcontractor to a general contractor under CASPA.

Although RGMOB falls within the definition of an "owner" in §502 of the act, Sparrow cannot be deemed a "contractor" which is defined as "[a] person authorized or engaged by an owner to improve real property." 73 P.S. §502. Sparrow was engaged by the general contractor, PACE, and executed subcontract agreements with PACE relative to the Port Jervis projects (plaintiff's amended complaint, ¶¶45-53, 55). In accordance with the

subcontract agreements, Sparrow submitted his monthly invoices and applications for payment to PACE alone (*Id.*, ¶50). The amended complaint is devoid of any contention that RGMOB authorized or engaged Sparrow to improve its real property. Based upon the factual averments of the amended complaint, Sparrow qualifies only as a subcontractor for purposes of the Port Jervis projects. See, *Wyatt, Inc. v. Citizens Bank of Pennsylvania*, 976 A.2d 557, 569 (Pa. Super. 2009). Inasmuch as CASPA does not provide a subcontractor with a remedy against an owner, as opposed to a general contractor, Sparrow has failed to state a plausible claim against RGMOB under CASPA, and RGMOB's demurrer to count IX of the amended complaint will be sustained.

### (C) *TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE CONTRACTUAL RELATIONS*

In their second and fourth demurrers, PACE, Pettinato and O'Hara seek to dismiss Sparrow's claims for tortious interference with existing and prospective contractual or business relations. To establish a cause of action for tortious interference with an existing contractual or business relationship, a plaintiff must demonstrate: (1) the existence of a contractual relationship between the plaintiff and a third party; (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege or justification for such interference on the part of the defendant; and (4) actual damage to the plaintiff as a result of the defendant's conduct. *Haun v. Community Health Systems, Inc.*, 2011 WL 166324 at *4 (Pa. Super. 2011); *Pachucy v. Nutrition, Inc.*, 9 D. & C. 5th 105, 112-113 (Lacka. Co. 2009). The tort of intentional interference with a prospective contractual

relation requires proof of: (1) a prospective contractual relationship between the plaintiff and a third party; (2) purposeful action on the part of the defendant specifically intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) actual damage resulting from the defendant's conduct. *Foster*, 2 A.3d at 665; *Pachucy*, 9 D.& C. 5th at 113.

Sparrow contends that PACE intentionally and purposefully harmed his contractual and business relations with nine vendors by wrongfully withholding timely payment of amounts due under the subcontract agreements, thereby rendering Sparrow unable to satisfy his financial obligations to those vendors. (Plaintiff's amended complaint, ¶¶262-266). Sparrow also claims that PACE further harmed those business relationships when it misrepresented to Sparrow that it had made payments to those vendors as per the memoranda of understanding/joint check agreements. (*Id.*, ¶267). With respect to Pettinato and O'Hara, Sparrow avers that those individuals (a) caused PACE to withhold payments that were owed to Sparrow, (b) charged unjust surcharges for payments that were allegedly made to Sparrow's vendors, and (c) falsely represented that payments were made to those vendors. Sparrow maintains that these actions were undertaken by Pettinato and O'Hara with the intention of causing severe cash flow shortages for Sparrow and damage to his contractual and business relationships (*Id.*, ¶¶276,280-283).

In demurring to Sparrow's tortious interference claims based upon the "gist of the action" doctrine, PACE, Pettinato and O'Hara argue that the duties which serve

as the bases for those claims arise from the parties' contracts and can be pursued only in a contract action. "When a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort." *Pennsylvania Manufacturer's Association Insurance Co. v. L.B. Smith, Inc.*, 831 A.2d 1178,1182 (Pa. Super. 2003); *Busy Bee. Inc. v. Wachovia Bank, N.A.*, 2006 WL 723487 at *19 (Lacka. Co. 2006), aff'd., 932 A.2d 248 (Pa. Super. 2007), app. denied, 598 Pa. 778, 959 A.2d 318 (2008). The gist of the action doctrine "maintains the conceptual distinction between breach of contract claims and tort claims, and precludes plaintiffs from recasting ordinary breach of contract claims as tort claims." *McShea v. City of Philadelphia*, 995 A.2d 334, 339 (Pa. 2010) (quoting *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10,14 (Pa. Super. 2002)).

Under this conceptual analysis, "[t]ort actions lie for breaches of duties imposed by law as a matter of social policy, while contract actions lie only for breaches of duties imposed by mutual consensus agreements between particular individuals." *Mirizio v. Joseph*, 4 A.3d 1073, 1079 (Pa. Super. 2010) (quoting *eToll*, supra); *Busy Bee, Inc.*, supra. The gist of the action doctrine acts to foreclose tort claims: (1) arising solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is

28

dependent on the success of the breach of contract claim.[4] *Strausser v. Pramco, III*, 944 A.2d 761, 767 (Pa. Super. 2008); *Reardon v. Allegheny College*, 926 A.2d 477, 486 (Pa. Super. 2007), *app. denied*, 596 Pa. 755, 947 A.2d 738 (2008). Thus, "[a] tortious interference with contract claim is barred by the gist of the action doctrine if it is not independent of a contract claim that is pled along with it." *Brown & Brown, Inc. v. Cola*, 2010 WL 3928589 at *25 (E.D. Pa. 2010) (quoting *Alpert v. General Land Partners, Inc.*, 574 F. Supp. 2d 491, 505 (E.D. Pa. 2008)).

The duties which serve as the predicates for Sparrow's tortious interference claims are clearly grounded in the parties' agreements. The obligations of PACE, Pettinato or O'Hara to make timely payments to Sparrow are premised solely upon the subcontract agreements between Sparrow and PACE. Similarly, the duties to make any payments to Sparrow's vendors are derived from the memoranda of understanding/joint check agreements executed by Sparrow and PACE. In addition, the service charges of 25 percent stem from the terms of the subcontract agreements.

Sparrow has not identified any duty on the part of PACE, Pettinato or O'Hara which is created by some

---

4. In contrast to the Superior Court's four-part analysis, the commonwealth court employs a "misfeasance/nonfeasance" test in determining whether an action sounds in contract or in tort under the gist of the action doctrine. Under the commonwealth court's approach, if there is a "misfeasance" or an improper performance of a contractual obligation, the defendant breaches a duty imposed by law as a matter of social policy and the gist of the action sounds in tort. Conversely, if there is a nonfeasance or mere failure to perform, the wrong attributed to the defendant is solely a breach of the defendant's duty to perform under the contract, such that the gist of the plaintiff's action sounds in contract. *Pratter v. Penn Treaty American Corporation*, 2010 WL 4395447 at * 7 n. 9 (Pa. Cmwlth. 2010) (quoting *Yocca v. Pittsburgh Steelers Sports, Inc.*, 806 A.2d 936, 944 (Pa. Cmwlth. 2002), rev'd. on other grounds, 578 Pa. 479, 854 A.2d 425 (2004)).

recognized social policy rather than the parties' contracts. *Compare, Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, 247 F.3d 79, 104-105 (3rd Cir. 2001) (joint venturer breached a fiduciary duty imposed "as a matter of social policy" inasmuch as Pennsylvania common law imposes such a fiduciary duty on joint venturers), cert. denied, 534 U.S. 1162 (2002). But see, *Mirizio*, 4 A.3d at 1085 ("...we conclude that the trial court erred in determining that the fraud and misrepresentation claim was not barred by the gist of the action because of the fiduciary duty that existed between the [joint venturer] parties."). Although Sparrow has alleged fraud and other misconduct by PACE, Pettinato and O'Hara in the performance of their contractual duties to pay Sparrow and his vendors, such wrongful conduct in the performance of contractual duties does not give rise to a tort claim under the gist of the action doctrine. *Autochoice Unlimited, Inc. v. Avanguard Auto Finance, Inc.*, 9 A.3d 1207, 1212 (Pa. Super, 2010); *Hart v. Arnold*, 884 A.2d 316, 340 (Pa. Super. 2005), *app. denied*, 587 Pa. 695, 897 A.2d 458 (2006); *eToll, Inc.*, 811 A.2d at 17-18. Therefore, based upon the allegations of the amended complaint, Sparrow's claims for tortious interference with existing and prospective business relations are barred by the gist of the action doctrine, and the demurrer to counts XXTV and XXV of the amended complaint will be sustained.[5] See, *Clubcom, LLC v.*

---

5. In light of our disposition of the gist of the action challenge presented by PACE, Pettinato and O'Hara, it is unnecessary to address their alternate demurrer that Sparrow is unable to establish the absence of "privilege or justification" for those defendants' actions under the subcontract agreements and memoranda of understanding/joint check agreements. Furthermore, by virtue of the fact that the only causes of action against Pettinato and O'Hara in court XXV of the amended complaint have been dismissed, their additional demurrer contesting the legal sufficiency of their individual liability is moot.

*Captive Media, Inc.*, 2010 WL 3718887 at *9 (W.D. Pa. 2010) (dismissing tortious interference with contractual relations claim based upon gist of the action doctrine); *B.D. G.P. Inc. v. Independent Mortgage Company*, 2004 WL 960013 at *3 (Phila. Co. 2004) (same).

As a practical matter, the dismissal of Sparrow's tortious interference claims does not foreclose his ability to seek damages for harm to his business relationships. Sparrow may theoretically attempt to recover for his damaged business relations as an item of consequential damages in his breach of contract action against PACE. "Where consequential damages are 'foreseeable' and were contemplated by 'the parties at the time they made the contract,' they will be awarded in order to put the victim of the contract breach in the same position as if there had been performance, not breach." *Condominium Court of Old Swedes v. Stein-O'Brien*, 973 A.2d 475, 483 (Pa. Cmwlth. 2009) (quoting *Ferrer v. Trustees of the University of Pennsylvania*, 573 Pa. 310, 341, 825 A.2d 591, 610 (2002)). Assuming arguendo that Sparrow can satisfy that burden of proof, he may recover damages in his contract action for any harm to his vendors' relationships due to the alleged breaches by PACE. See, *Glazer v. Chandler*, 414 Pa. 304, 308, 200 A.2d 416, 418 (1964) ("...where, as in this case, the allegations and evidence only disclose that defendant breached his contracts with plaintiff and that as an incidental consequence thereof plaintiff's business relationships with third parties have been affected, an action lies only in contract for defendant's breaches, and the consequential damages recoverable, if any, may be adjudicated only in that action."); *Standard Pipeline Coating Co., Inc. v. Solomon & Teslovich, Inc.*, 344 Pa.

Super. 367, 378, 496 A.2d 840, 845 (1985) (declining to recognize new cause of action in tort arising from alleged breach of contract with specific intent to drive other contracting party out of business, but affirming consequential damages award which included losses for destruction of business); *Star Bakery, LLC v. Preit Services, LLC*, 2008 WL 4690148 at * 3 (Phila. Co. 2008) (citing *Glazer* and holding that harm to plaintiff's business relationships as a result of defendant's contractual breach may be recovered as consequential damages in contract action). Indeed, the defendants have acknowledged as much in their preliminary objections to Sparrow's tortious interference claims where they attest:

> 53. The allegations in the tortious interference claims merely aver incidental consequences of the alleged breach, including the alleged affect it had on [Sparrow's] business relationships.

> 54. Any action that [Sparrow] may have for same lies only in contract for PACE'S alleged breach of the memorandum of understanding and/or joint check agreements, and the alleged consequential damages that [Sparrow] maintains he suffered can only be brought in such an action. *Glazer v. Chandler*, 414 Pa. 304, 200 A.2d 416 (1964) (defendants' preliminary objections, ¶¶53-54).

Thus, the dismissal of counts XXIV and XXV of the amended complaint does not necessarily preclude Sparrow's recovery of damages for harm to his business relationships as a consequence of PACE's contractual breaches.

## (D) *PUNITIVE DAMAGES*

32

In their sixth demurrer, PACE, Pettinato and O'Hara challenge the legal sufficiency of Sparrow's claim for punitive damages (defendant's preliminary objections, ¶¶106-112). Punitive damages have been described as "an extreme remedy available in only the most exceptional matters." *Scampone v. Grane Healthcare Company*, 2010 WL 2780315 at * 22, ¶74 (Pa. Super. 2010) (citing *Phillips v. Cricket Lighters*, 584 Pa. 179, 188, 883 A.2d 439, 445 (2005)). Punitive damages may be awarded only when the plaintiff has established that the defendant acted in an outrageous fashion due to either the defendant's evil motive or the defendant's reckless indifference to the rights of others, *Doe v. Wyoming Valley Health Care System. Inc.*, 987 A.2d 758, 768 (Pa. Super. 2009); *Wagner v. Onofrey*, 2006 WL 3704801 at * 4 (Lacka. Co. 2006); *Glodzik v. Wink Products Co.*, 61 D. & C. 4th 241, 260 (Lacka. Co. 2003).

Sparrow's claims for punitive damages against PACE, Pettinato and O'Hara are contained in counts XXIV and XXV of the amended complaint setting forth Sparrow's only tort claims. Since Sparrow's causes of action for tortious interference with existing and prospective contractual and business relations have been dismissed, Sparrow's remaining claims are grounded in express or implied contract or are based upon statutes which do not authorize the recovery of punitive damages. See, 62 Pa. C.S.A. §3935 (providing for counsel fees, expenses and penalty equal to one percent per month of amount due if party withholding payment acted in bad faith); 73 P.S. §512 (authorizing recovery of counsel fees, expenses and penalty equal to one percent per month of the amount wrongfully withheld). It is well settled that "[p]unitive

damages are awarded in tort actions, not for breach of contract."[6] *McShea*, 995 A.2d at 340 n. 5. Accord, *Ash v. Continental Insurance Company*, 593 Pa. 523, 529,932 A.2d 877,881 (2007) ("The law in Pennsylvania has always been that punitive damages cannot be recovered for breach of contract.").

Following the dismissal of counts XXIV and XXV of the amended complaint, no tort claims remain present in this case. Since punitive damages may not be awarded for breach of contract or violations of CASPA and the commonwealth procurement code, Sparrow is unable to pursue a valid claim for punitive damages in this matter. Hence, the preliminary objections in the nature of a demurrer to the claims for punitive damages in ¶¶273 and 288 of the amended complaint will be sustained.

### (E) *PACE LIABILITY AS PROJECT "OWNER"*

PACE seeks to strike any allegations in the amended complaint which assert that PACE was the "owner" of the Port Jervis projects for purposes of liability under CASPA. In paragraph 44 of the amended complaint, Sparrow avers that "[b]ecause PACE and RGMOB shared common ownership and their interests were aligned, in effect, PACE was not only the general contractor but also the owner relative to the Port Jervis projects" (plaintiff's amended complaint, ¶44). Paragraph 45 of the amended complaint also avers that "[R]elative to the Port Jervis projects, PACE was effectively the owner and, therefore,

6. There is a statutory exception to this rule in that 42 Pa. C.S. §8371(2) authorizes the recovery of punitive damages against an insurer which acts in bad faith towards its insured in connection with a claim that the insured presents under the insured's insurance contract. See, *Toy v. Metropolitan Life Ins. Co.*, 593 Pa. 20,928 A.2d 186 (2007).

34

controlled when it, as the general contractor, received payment from RGMOB"[7] (*Id.*, ¶45).

In seeking to strike the foregoing averments, PACE argues that "[t]o the extent any of the claims or accusations against PACE are based upon it being the 'owner' in relation to any of the Port Jervis projects...such claims are legally insufficient, in opposition to the averments in the [amended] complaint, contrary to the specific terms of the subcontract agreements for said project, and.. .contrary to Pennsylvania's corporate and other laws" (defendants' preliminary objections, ¶137). Sparrow opposes PACE'S motion to strike by incorporating his earlier "single entity" or "alter ego" liability arguments relating to RGMOB's demurrers (plaintiff's brief in opposition, pp. 41-42). As noted above, the single entity theory is not recognized in Pennsylvania, see *Advanced Telephone Systems Inc.*, supra, and the alter ego theory may be used only to impose liability upon the corporation's alleged owners, Pettinato and O'Hara. See, *S. T. Hudson Engineers, Inc. v. Camden Hotel Development Associates*, 747 A.2d 931,935-936 (Pa. Super. 2000) (stating that..."the alter ego theory of piercing the corporate veil.. .applies where the individual or corporate owner controls the corporation to be pierced, and the controlling owner is to be held liable."). Based upon the averments of the amended complaint, there is no basis in law for characterizing PACE as the "owner" of the Port Jervis projects and Sparrow's allegations to the contrary in paragraphs 44 and 45 of the amended

---

7. However, in count V of the amended complaint addressing PACE's alleged liability under CASPA, Sparrow alleges that "Sparrow is a subcontractor and PACE is a contractor as such terms are defined in the Contractor and Subcontractor Payment Act, 73 P.S. §502 (the 'Act')." (*Id.*, ¶137).

complaint will be stricken.

### (F) *WASHINGTON/SPRUCE PROJECT CLAIM*

In the final demurrer, PACE challenges the legal sufficiency of Sparrow's breach of contract claim regarding the Washington/Spruce project. The subcontract agreement for that project obligated Sparrow to commence work "when notified to do so by PACE." PACE contends that "[s]ince [Sparrow's] amended complaint maintains that notification was necessary before the contract was to take effect, [Sparrow's] breach of contract claim for the Washington/Spruce project is legally insufficient because it has not alleged it was ever notified"[8] (defendants' preliminary objections, ¶142).

"A cause for action for breach of contract must be established by pleading (1) the existence of a contract, including the essential terms, (2) a breach of duty imposed by the contract, and (3) resultant damages." *Clairton Slag, Inc. v. Department of General Services,* 2 A.3d 765, 776 (Pa. Super. 2010). Sparrow has alleged that he and PACE entered into a subcontract agreement dated January 15, 2009 "whereby Sparrow agreed to perform the completion of site work and related services relative to the Washington/ Spruce parking facility located at 117 N. Washington Avenue, Scranton, Pennsylvania" (plaintiff's amended

---

8. PACE has also attempted to raise new facts in its final demurrer by averring that "[e]ven though PACE maintains that it did in fact notify Sparrow to commence work on numerous occasions, but Sparrow failed and refused to begin the work, according to [Sparrow's] amended complaint, Sparrow was never notified by PACE to do any work on the Washington/Spruce project." (Defendants' preliminary objections, ¶141). However, preliminary objections must be decided "solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer." *Foster,* 2 A.3d at 662.

complaint, ¶103). Sparrow avers that the subcontract agreement provided "that PACE would pay Sparrow the sum of $249,000.00" and that Sparrow would "commence the work when notified to do so by PACE" (*Id.*, ¶¶104-105). Sparrow further contends that "[i]n breach of contract and contrary to the provisions of Article III of the subcontract agreement, defendant PACE failed to provide Sparrow with notice to proceed relative to the Washington/Spruce project" and instead retained other subcontractors to perform Sparrow's work (*Id.*, ¶¶107-108). Finally, Sparrow asserts that as a result of PACE's wrongful termination of the subcontract agreement, Sparrow has suffered lost revenues and incurred various expenses relating to pricing, budgeting, planning and preparation for the Washington/Spruce project (*Id.*, ¶¶109,111).

Sparrow has properly averred the existence of a contract (including its essential terms), PACE's breach of a duty imposed by the contract, and damages sustained as a result of PACE's breach. The PACE-Sparrow agreement was arguably formed, but not ultimately completed, irrespective of any notification by PACE. Sparrow maintains that PACE's failure to notify him to start his work constituted a breach of their subcontract and resulted in certain damages. See, *John B. Conomos, Inc. v. Sun Co., Inc.*, 831 A.2d 696, 707-708 (Pa. Super. 2003) (when a party fails to perform any obligation imposed by the parties agreement, the lack of performance is deemed a breach of the agreement creating that obligation), app. denied, 577 Pa. 697, 845 A.2d 818 (2004). Since the necessary elements of a breach of contract claim have been averred, PACE's demurrer to count XXIII will be overruled.

(G) *SPECIFICITY CHALLENGES*

Defendants raise four challenges to the amended complaint on the grounds of insufficient specificity in a pleading. Defendants first contend that throughout the amended complaint, Sparrow makes references to "defendants" generally without specifying which defendants are being accused of certain conduct (defendants' preliminary objections, ¶¶146-157). Sparrow counters that he has indicated in the caption of each count the exact defendant(s) being referenced in that particular count, such that his allegations set forth therein are sufficiently specific.

While it is true that the relevant defendants are identified by name in the captions of each count of the amended complaint, there are more than 100 introductory paragraphs which precede count I "breach of contract - the Port Jervis Projects: *Sparrow v. PACE*." At least 33 of those paragraphs, ¶¶26-38,42, 59, 61-64, 66,74-75, 77-80, 90-91, 93-96 and 108, generically refer to "defendants." See, *Mansour v. Gnaden Hutten Memorial Hospital,* 3 D. & C. 5th 149 (Monroe Co. 2007) (striking averment charging "defendants" with recklessness without specifying which of seven defendants was so accused). However, when those paragraphs are read in the context of the antecedent averment rather than in isolation, it is apparent that the defendants involved are PACE, Pettinato and O'Hara, not RGMOB or IFIC. See, *Yacoub*, 805 A.2d at 589. Thus, the averments at issue are sufficiently specific to enable the responding defendant(s) to answer the amended complaint, particularly in light of the foregoing dismissals of defendants RGMOB, Pettinato and O'Hara.

Defendants also object to Sparrow's allegations that "RGMOB was somehow transformed into the general

contractor on the Port Jervis project and PACE became an owner of the Port Jervis project" (defendants' preliminary objections, ¶160). Defendants assert that those averments "lack the requisite specificity since common ownership is not enough to make the two separate entities 'one in the same' and the allegations are contrary to the language in the subcontract" (*Id.*, ¶163). In reply, Sparrow merely incorporates his earlier argument relating to the single entity theory of liability (plaintiff's brief in opposition, p.48) In light of our ruling in Section 11(B) above regarding Sparrow's single entity and alter ego theories of liability, any allegations in the amended complaint characterizing PACE as the owner of, and RGMOB as the general contractor for, the Port Jervis projects will be stricken.

Defendants' third preliminary objection under Rule 1028(a)(3) attacks Sparrow's averments pertaining to additional work performed beyond the scope of the subcontract agreements. Defendants maintain that Sparrow "seeks damages for the alleged work done on the change orders, additional work and work outside the contract, but [Sparrow] fails to state the cost of said work" (defendants' preliminary objections, ¶172). Until such information has been provided, defendants contend that they cannot prepare a responsive pleading or defense (*Id.*, ¶173).

Contrary to defendants' objections, the amended complaint does specifically identify the amounts charged and owed for extra work. Sparrow has averred that the original Port Jervis project contract of $537,750.00 increased to $604,062.32 as a result of additional work and that an unpaid balance of $102,827.15 remains (plaintiff's amended complaint, ¶¶47, 54-55). With respect to the Tobyhanna project, Sparrow alleges that due to additional

work, the subcontract increased from $839,000.00 to $936,017.13, with a balance due of $168,505.94 (*Id.*, ¶¶67, 72, 77). Sparrow does not claim that extra work was performed on the Ricketts Glen project, but seeks to recover an unpaid balance of $336,407.04 on the original subcontract in the amount of $800,000.00 (*Id.*, ¶¶83, 88-89). Based upon the specificity of those averments, defendants' third objection will be denied.

Defendants' final specificity objection concerns Sparrow's claims for special damages under CASPA and the Prompt Payment Act. Defendants object to the extent that Sparrow periodically uses the phrase "at a minimum" following the identification of a specific sum of claimed damage. Defendants posit that such a qualification "leaves the amount of those damages due under the contract open ended which is contrary to the Rules of Civil Procedure" (defendants' preliminary objections, ¶174).

Several trial courts have stricken comparable conditional phrases such as "including but not limited to" language preceding allegations of negligence or damages. See e.g., *Raffaele v. Ialeggio*, 2008 WL 8120626 at * 6-7 (Northampton Co. 2008); *Cicero v. Cominsky*, 25 D. & C. 4th 422, 424 (Luz. Co. 1995). However, Sparrow has stipulated that his inclusion of the words "at a minimum" in his claims for damages under CASPA and the Prompt Payment Act is simply intended to preserve his right to recover penalties, counsel fees and expenses under those statutes (plaintiff's brief in opposition, p. 47). By virtue of that stipulation, the challenged averments are sufficiently specific to enable the defendants to prepare a responsive pleading and defense. As a consequence, defendant's preliminary objections pursuant to Pa. R.C.P. 1028(a)(3)

40

will be overruled.

## (H) *RULE 1019(i) OBJECTION*

In defendants' final preliminary objection, they seek to dismiss the amended complaint for failure to attach the memoranda of understanding/joint check agreements that are referenced in the amended complaint and which serve as the bases for several of Sparrow's claims (defendants' preliminary objections, ¶¶184-191). Pennsylvania Rule of Civil Procedure 1019(i) states that "[w]hen any claim.. .is based upon a writing, the pleader shall attach a copy of the writing or the material part thereof, but if the writing or copy is not accessible to the pleader, it is sufficient so to state, together with the reason, and to set forth the substance in writing." Pa. R.C.P. 1019(i). The failure to attach a relevant writing to a pleading is generally considered to be a fatal defect, see, *Atlantic Credit and Finance. Inc. v. Giuliana*, 829 A.2d 340, 345 (Pa. Super. 2003), app. denied, 577 Pa. 676, 843 A.2d 1236 (2004), and "[o]rdinarily, a complaint should be stricken for failure to attach an essential document." *Adamo v. Cini*, 656 A.2d 576, 579 (Pa. Cmwlth. 1995). If the pleader avers that the writing is already in the possession of the defendant and the pleader sets forth the relevant substance of that document, preliminary objections based upon the failure to attach a copy of the document should be overruled. See, *McClellan v. HMO of Pennsylvania*, 604 A.2d 1053, 1061 n. 10 (Pa. Super. 1992), *app. denied,* 532 Pa. 664, 616 A.2d 985 (1992); *Petty v. Scranton School District*, 101 Lacka. Jur. 137, 145 n. 4 (1999).

In paragraphs 31, 33, 34 and 35 of the amended complaint, Sparrow sets forth averments pertaining to the

memoranda of understanding/joint check agreements, and in the process, identifies the relevant substance of those writings. Although those memoranda and agreements have not been attached to the amended complaint, correspondence from Sparrow's counsel dated January 21, 2011 confirms that defense counsel has been provided with all memoranda of understanding/joint check agreements in Sparrow's possession and that defense counsel has agreed to produce the remaining memoranda of understanding/joint check agreements in response to Sparrow's outstanding discovery requests (docket dntry no. 23). Therefore, it is unnecessary to require Sparrow to file another amended complaint attaching documents that are already in the defendants' custody, and the defendants' preliminary objections based upon Rule 1019(i) will be overruled.

## ORDER

And now, February 7, 2011, upon consideration of "defendants' preliminary objections to plaintiff's amended complaint," the memoranda of law submitted by the parties, the correspondence from plaintiff's counsel dated January 21, 2011, and the oral argument of counsel on January 20, 2011, and based upon the reasoning set forth in the foregoing memorandum and the stipulations of counsel at the time of oral argument, it is hereby ordered and decreed that:

1. The preliminary objections of defendant RGMOB, L.P., in the nature of a demurrer to counts VI (breach of contract), VII (quantum meruit), VIII (unjust enrichment) and IX (Violation of the Contractor and Subcontractor Payment Act) are sustained;

42

2. The preliminary objections of defendants PACE/CM, Inc., d/b/a PACE Construction Managers, Inc., Robert W. Pettinato and Natalie Pettinato O'Hara to counts XXIV and XXV of the amended complaint setting forth claims for "Tortious Interference with Existing and/or Prospective Contractual and/or Business Relations" are sustained;

3. The preliminary objections of defendants PACE/CM, Inc., d/b/a PACE Construction Managers, Inc., Robert W. Pettinato and Natalie Pettinato O'Hara to the claims for punitive damages set forth in paragraphs 273 and 288 of the amended complaint are sustained;

4. The preliminary objections of defendant PACE/CM, Inc., d/b/a PACE Construction Managers, Inc. in the nature of a demurrer to the averments contained in paragraphs 44 and 45 of the amended complaint identifying defendant PACE/CM, Inc., d/b/a PACE Construction Managers, Inc. as the "owner" of the Port Jervis projects are sustained and those allegations are stricken from the amended complaint;

5. The preliminary objections of defendant PACE/CM, Inc., d/b/a PACE Construction Managers, Inc. to count XXIII (breach of contract) of the amended complaint are overruled;

6. The preliminary objections under Pa. R.C.P. 1028(a)(3) to the plaintiff's averments identifying defendant PACE/CM, Inc., d/b/a PACE Construction Managers, Inc. as the owner of the Port Jervis projects and defendant RGMOB, L.P. as the general contractor for the Port Jervis projects are sustained and those allegations are stricken from the amended complaint.

7. In all other respects, the defendants' preliminary objections on the grounds of insufficient specificity under Pa. R.C.P. 1028(a)(3) are overruled;

8. Defendants' preliminary objections based upon Pa. R.C.P. 1019(i) are overruled;

9. Defendants RGMOB, L.P., Robert W. Pettinato and Natalie Pettinato O'Hara are dismissed as named defendants in this case; and

10. Within the next twenty (20) days, defendants PACE/CM, d/b/a PACE Construction Managers, Inc. and International Fidelity Insurance Company shall file a responsive pleading to the complaint.