## Mattia v. Botch

*Kevin A. Hardy*, for plaintiffs.
*Peter J. Quigley*, for defendants.

ZULICK, *J.*, December 26, 2013—

## FINDINGS OF FACT

1. Plaintiffs Russell Mattia and Rose Mattia own a home in Pocono Summit, Pennsylvania where they reside.

2. Chester Botch and Amy Strauss own a home in Long Pond, Pennsylvania where they reside.

3. The Mattias, Mr. Botch and Ms. Strauss were friends before this dispute arose.

4. Chester Botch is a contractor trading as right choice construction and does excavation and landscaping among other types of construction.

5. Mr. Botch and Ms. Strauss suffered a fire in their home and needed to replace their kitchen appliances in March, 2012. They requested financial help from the Mattias to buy kitchen appliances.

6. Russell Mattia and Chester Botch reached an oral agreement under which the Mattias would pay for the appliances for the Botch/Strauss home and Chester Botch would excavate and pour a slab for the Mattia porch and

supply materials with a total value of the amount of the appliance purchase.

7. The Mattias bought the appliances for Botch and Strauss at Lowes on March 24, 2012, paying $3,585.89.

8. The Mattias obtained the permits and the architectural plans for the addition to their residence.

9. The parties did not agree on a specific timetable for Botch's completion of the job, but when Botch did not start work for months, the Mattias began to demand his performance of their agreement.

10. Botch came to the Mattias property and staked the areas scheduled for excavation, but did not begin excavation.

11. Botch also paid the Mattias $200 toward their purchase of the Botch/Strauss appliances.

12. On July 7, 2013, the Mattias sent Botch and Strauss an email declaring the parties' agreement to have been breached due to Botch's failure to proceed. Plaintiffs' exhibit 3. The email requested repayment of the remaining funds the Mattias were out of pocket for their purchase of the Botch/Strauss appliances.

13. On July 31, 2012, the Mattias sued Botch and Strauss in District Judge Fluegel's court, seeking repayment of their funds. Judgment was awarded to them on November 1, 2012.

14. The defendants appealed the judgment and the Mattias commenced their suit at No. 9891 Civil 2012 in response to the appeal.

15. Chet Botch trading as right choice construction filed a new civil action against Russell Mattia seeking payment of invoices and for the "return of a riding mower" in District Judge Fluegel's court on May 16, 2013. Plaintiff's exhibit 8.

16. Russell Mattia and Rose Mattia responded with a new civil action against Chet Botch trading as right choice construction on May 30, 2013, in District Judge Fluegel's court for abuse of process or malicious prosecution.

17. On August 14, 2013, Attorney Quigley wrote to Judge Fluegel to state that Chester Botch was discontinuing his May 16, 2013 suit against the Mattias. Defendant's exhibit 4. Attorney Quigley notified Attorney Hardy, the Mattias' lawyer, that his client had discontinued the action.

18. The Mattias continued with their malicious prosecution suit against Botch before Judge Fluegel and obtained a judgment on August 15, 2013 in the amount of $700.00 plus costs.

19. Chester Botch appealed that judgment and the Mattias filed a complaint for malicious prosecution on September 23, 2013 in this court at No. 7220 Civil 2013.

20. Botch filed an answer to that complaint and the two cases were consolidated for trial by agreement of the parties.

21. Botch and Strauss' answer filed in 9891 Civil 2012 attached invoices for work done on the Mattia property before the Mattias bought the Botch/Strauss appliances. One invoice, for $3,550.00, was for excavation and landscaping on the Mattia property and dredging in the lake next to the Mattia dock. The second invoice was for

$348.00 for "RCI payment for upgrade to room in France."

## DISCUSSION

The Mattias seek judgment against Chester Botch and Amy Strauss on theories of breach of contract, unjust enrichment and malicious prosecution and abuse of process. The testimony in the cases establishes that the parties were friends over the past several years and that Chester Botch had done excavation and landscaping work on the Mattias' property without written agreements. At trial, Mr. Botch testified that this work was done for less than his going rates because of the parties' friendship. The Mattias referred him work during this time, and he gave them possession of a riding lawn mower and paid for a vacation timesharing reservation in France through his RCI program when the Mattias were vacationing there.

Mr. Botch and Ms. Strauss had a fire in their home and in March, 2012 needed to replace their kitchen appliances in order to obtain a certificate of occupancy from their township. They did not have the financial ability to make those purchases. Chet Botch entered into an agreement under which the Mattias would purchase the needed appliances for Botch/Strauss, and Botch would excavate for a porch at the Mattias' home, pour a cement slab and supply materials for the porch construction for the same price as the cost of the appliances. The Mattias bought the appliances on March 24, 2012 for $3,585.89.

When Chet Botch had not begun excavating the Mattias property by July, 2013, the Mattias declared that he had breached the parties' agreement, and requested repayment of the funds they had spent on the appliances. Mr. Botch paid the Mattias $200.00, but has not repaid the balance

of the funds.

Mr. Botch admitted in his answer and at trial that the Mattias paid for the appliances. He generated an invoice dated November 13, 2012 attached to his answer in No. 9891 Civil 2012 seeking payment of $3,550 from the Mattias for dredging the lake on the Mattia property. The Mattias had received a similar invoice dated December 20, 2012, from Mr. Botch's construction company seeking $4,500.00 for this work. Rose Mattia testified that this work had been done on the Mattia property more than one year before and that the Mattias had paid Mr. Botch for the work. They had received no invoices from him until the December 20, 2012 invoice, which they received after November 27, 2013, the date Botch/Strauss appealed the judgment in favor of the Mattias from District Judge Fluegel's office.

At trial, Mr. Botch admitted that the November 12, 2012 invoice was for work he did in 2011. There is no dispute that Chet Botch was doing work for the Mattias before the Mattias' appliance purchase based upon handshake understandings with Russell Mattias. Mr. Botch may have given the Mattias favorable rates in doing this work. However, he did not bill the Mattias in 2012 for this work and at the time they loaned Botch and Strauss the money for the appliances, the Mattias did not owe Botch any money for his construction work. If they did, the parties would have adjusted what was owed to the Mattias for the appliance purchase in March of 2012. Botch owes the Mattias the sum of $3,385.89 which is the original purchase amount of the appliances ($3,585.89-200.00 = $3,385.89), for breach of contract.

Amy Strauss owes the same amount to the Mattias due to unjust enrichment. She was aware that the Mattias were loaning them the money for the appliances and that they came with a promise of repayment. "A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, but in spite of the absence of an agreement, when one party receives unjust enrichment at the expense of another." *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. 2001). The elements of unjust enrichment are:

> benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched. Moreover, the most significant element of the doctrine is whether the enrichment of the defendant is unjust. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.

*Styer v. Hugo*, 619 A.2d 347, 350 (Pa. Super. 1993) (quotation marks omitted); *Stoeckinger v. Presidential Financial Corp. of Delaware Valley*, 948 A.2d 828, 833 (Pa. Super. 2008).

Finally, the Mattias filed an action for malicious abuse of process against Chet Botch in No. 7220 Civil 2013. To understand this claim, it is necessary to consider the timing

of the parties' suits before the district judge. The Mattias started the litigation with their claim for the appliances loan on July 31, 2012. That case went to a hearing and judgment was entered by Judge Fluegel in favor of the Mattias on November 1, 2012 in the amount of $3,563.00. This judgment was appealed by Botch/Strauss.

Chet Botch sued Russell Mattia on May 16, 2013 in Judge Fluegel's court for unpaid construction invoices and the return of a riding lawn mower. The Mattias responded on May 30, 2013 with a complaint against Chet Botch for "abuse of process/malicious prosecution," stating that Botch filed the suit without reasonable cause and used "the legal system for unlawful purpose." Judge Fluegel scheduled hearings on both suits on August 15, 2013. On August 14, 2013, Attorney Quigley notified Judge Fluegel and the Mattias' attorney that Botch was withdrawing his claim. The Mattias continued with their suit against Botch and obtained a judgment against him in the amount of $700.00 plus costs. He appealed that judgment which led to the proceedings in No. 7220 Civil 2013.

Pennsylvania common law defines a cause of action for abuse of process as follows:

The tort of "abuse of process" is defined as the use of legal process against another primarily to accomplish a purpose for which it is not designed. To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed; and (3) harm has been caused to the plaintiff. This tort differs from that of wrongful use of civil proceedings in that, in the

former, the existence of probable cause to employ the particular process for its intended use is immaterial. The gravamen of abuse of process is the perversion of the particular legal process for a purpose of benefit to the defendant, which is not an authorized goal of the procedure. In support of this claim, the [plaintiff] must show some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process...; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.

*Shiner v. Moriarty*, 706 A.2d 1228, 1236 (Pa. Super. 1998), *appeal denied*, 556 Pa. 711, 729 A.2d 1130 (1998). *Lerner v. Lerner*, 954 A.2d 1229, 1238 (Pa. Super. 2008).

The plaintiffs have failed to prove a case of abuse of process against Mr. Botch. He commenced a civil action against them for work he claimed he was unpaid for. Although the court has found against him in this trial on that cause of action, he had the right to assert the claim against the Mattias and to attempt to prove it. Additionally, he withdrew the claim before it came to hearing before District Judge Fluegel. The Mattias' claim will be denied.

## DECISION

And now, this 26th day of December, 2013, following a non-jury trial in these matters, it is ordered as follows:

1. Judgment is entered in favor of plaintiffs Russell Mattia and Rose Mattia and against Chester Botch and Amy Strauss in the amount of $3,385.89 plus costs and interest from July 7, 2012 in No. 9891 Civil 2012.

2. Judgment is entered in favor of defendants right choice construction and Chet Botch and against plaintiff Russell Mattia in No. 7220 Civil 2013.