J.A19044/14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JANET L. RYAN REALTY, INC., T/D/B/A | : | IN THE SUPERIOR COURT OF |
| CENTURY 21-AMERICAN HERITAGE | : | PENNSYLVANIA |
| REALTY AND BEYNON & COMPANY | : | |
| INCORPORATED, | : | |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| SANDRA LANGTON, | : | |
| | : | |
| Appellee | : | No. 1989 WDA 2013 |

Appeal from the Order Entered November 25, 2013
In the Court of Common Pleas of Westmoreland County
Civil Division No(s).: 562 of 2012

| | | |
|---|---|---|
| JANET L. RYAN REALTY, INC., T/D/B/A | : | IN THE SUPERIOR COURT OF |
| CENTURY 21-AMERICAN HERITAGE | : | PENNSYLVANIA |
| REALTY AND BEYNON & COMPANY | : | |
| INCORPORATED, | : | |
| | : | |
| v. | : | |
| Appellees, | : | |
| | : | |
| SANDRA LANGTON, | : | |
| | : | |
| Appellant | : | No. 2007 WDA 2013 |

Appeal from the Order Entered November 25, 2013
In the Court of Common Pleas of Westmoreland County
Civil Division No(s).: 562 of 2012

BEFORE: BENDER, P.J.E., OLSON, and FITZGERALD,[*] JJ.

---

[*] Former Justice specially assigned to the Superior Court.

J. A19044/14

MEMORANDUM BY FITZGERALD, J.:                    **FILED FEBRUARY 17, 2015**

Appellants/Cross-Appellees, Janet L. Ryan Realty, Inc., trading or doing business as Century 21-American Heritage Realty, and Beynon & Co., Inc. (collectively, "Brokers") appeal from the orders entered in Westmoreland County Court of Common Pleas resolving their and Appellee/Cross-Appellant, Sandra Langton, motions for summary judgment. Each party alleges numerous trial court errors with respect to the merits. We affirm in part and vacate in part, as set forth below.

We adopt the facts and procedural history set forth by the trial court's opinion. Trial Ct. Op., 11/25/13, at 1-5. We add that the listing contract required the owners of the property to convey the property title to any purchaser. Ex. B to Brokers' Compl., 1/27/12. The contract also included language that the undersigned signatories represent they are the sole owners of the property. *Id.* As the trial court's opinion noted, only Steven Langton—Langton's husband—signed the listing contract. Trial Ct. Op. at 2.

Brokers timely appealed, and Langton timely cross-appealed. The trial court did not order the parties to file Pa.R.A.P. 1925(b) statements, although it filed a Rule 1925(a) decision adopting its prior opinion. Order, 12/18/13. We address Brokers' appeal first.

Brokers raise the following issues on appeal:

> Whether awarding a sales commission to [Brokers] on a
> sale that occurred more than one year following the
> termination of their Listing Contract would violate the Real

>    Estate Licensing and Registration Act [("RELRA")], 63 P.S. § 344.503(a)(10).
>
>    Whether [Brokers] can receive a sales commission on a sale by Langton to Dent Properties when Century 21 . . . introduced Michael Dent (the principal of Dent Properties) to Langton?
>
>    Whether [Brokers] were the "efficient procuring cause" of the sale of Langton's property to Dent Properties, as a result of which they are entitled to a sales commission.
>
>    Whether the termination of the Listing Contract only precluded [Brokers] from continuing to display Langton's property to possible buyers, but did not prevent them from receiving a sales commission if Langton thereafter sold the property to a person or entity that was introduced to her by [Brokers] during the time that the Listing Contract was in full force and effect?

Brokers' Brief at 4.

We summarize three of Brokers' arguments in support of all of their issues, as they are interrelated.[1] They contend that RELRA does not bar a sales commission if the sale occurred after the listing agreement terminated

---

[1] Brokers' brief raised four arguments, which do not correspond with the four issues presented. **See** Pa.R.A.P. 2116, 2119. Its unjust enrichment argument, for example, is not explicitly raised in its four issues. We decline to find waiver, however. **See PHH Mortg. Corp. v. Powell**, 100 A.3d 611, 615 (Pa. Super. 2014) (declining to find waiver for two issues despite numerous violations of appellate briefing rules); **see also Commonwealth v. Briggs**, 12 A.3d 291, 343 (Pa. 2011) ("The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised.").

pursuant to a "definite termination date." *See* 63 P.S. § 455.604(a)(10). Brokers maintain that the statutory requirement for a "definite termination date" in a listing agreement does not bar a broker from receiving a sales commission "if the property was purchased by someone who was originally shown the property" during the term of the listing agreement but purchased the property after the agreement's expiration. Brokers' Brief at 11. They state the court erred by invalidating a "savings clause" that purportedly permitted a post-termination sales commission. Brokers argue they were the "efficient procuring cause of the sale" and showed the property—held as a tenancy by entirety—to a corporate alter ego of the actual purchaser. *Id.* at 18, 21-22. Langton counters that because she never signed the listing contract, she is not obligated to pay Brokers the sales commission. In essence, Langton contends Brokers' statutory or contractual arguments are premature. We hold Brokers are not entitled to relief.

In ***Charlie v. Erie Ins. Exch.***, 100 A.3d 244 (Pa. Super. 2014), we set forth the well-settled standard of review:

> Pennsylvania law provides that summary judgment may be granted only in those cases in which the record clearly shows that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issues of material fact exist. In determining whether to grant summary judgment, the trial court must view the record in the light most favorable to the non-moving party and must resolve all doubts as to the existence of a genuine issue of material fact against the moving party.

*Id.* at 250 (citation and punctuation omitted). We can affirm the trial court on any basis. ***Donnelly v. Bauer***, 720 A.2d 447, 454 (Pa. 1998).

In ***Clingerman v. Sadowski***, 519 A.2d 378 (Pa. 1986), our Supreme Court stated the law on a tenancy by the entirety:

> A tenancy by the entireties is a unique form of co-ownership grounded in the common law concept that husband and wife were but one legal entity. It exists when property, either real or personal, is held jointly by a husband and wife, with its essential characteristic being that each spouse is seised of the whole or the entirety and not a divisible part thereof. Neither spouse in a tenancy by the entireties may independently appropriate property to his or her own use to the exclusion of the other, and neither spouse, acting independently, may sever the estate by, for example, conveying part of the property away.
>
> A tenancy by the entireties is also characterized by the right of survivorship; upon the death of one spouse the survivor becomes the sole owner of the entireties property.
>
> Because a tenancy by the entireties is grounded in the unity of the marital relationship, it can be severed only in certain limited circumstances. It is, of course, terminated upon the death of one of the co-tenants. During the parties' lifetimes it may be severed by: a joint conveyance of the estate, divorce, or mutual agreement, either express or implied.

*Id.* at 380-81 (footnote and citations omitted).

In ***Regions Mortg., Inc. v. Muthler***, 889 A.2d 39 (Pa. 2005), our high court examined whether a wife could be obligated to pay a mortgage[2] on a property that passed to her upon her husband's death when she did not

---

[2] A mortgage is a contract. ***Metro. Life Ins. Co. v. Liberty Ctr. Venture***, 650 A.2d 887, 890 (Pa. Super. 1994).

sign the mortgage. ***Id.*** at 40. The ***Muthler*** Court set forth the facts, as follows:

> In 1999, Joseph and Susan Muthler purchased a property from Elwood Bennett; the property was titled in the names of both Joseph and Susan. The Muthlers jointly applied for a mortgage, and both of their names appeared on the mortgage documents. Prior to closing, however, the mortgagee, CTX Mortgage Company, unilaterally removed Susan's name from the mortgage. Thereafter, the mortgage named only Joseph, although it correctly indicated he was married. Schedule "A" to the mortgage contained a description of the property and clearly stated the property was owned jointly by Joseph and Susan. Both the mortgage and Schedule "A" were prepared by CTX.
>
> Joseph died shortly after the property was purchased. Susan contacted Regions Mortgage, Inc., successor to CTX, in an attempt to transfer the mortgage to her name; Regions refused. Eventually, Susan contacted an attorney who advised her that the property passed to her absolutely upon Joseph's death and, as she was neither a named mortgagor nor a signatory to the mortgage, she had no obligation to pay it. Susan adopted this position, and stopped making payments. Regions then filed an action to quiet title.

***Id.***

Our Supreme Court held against Regions and in favor of Susan. ***Id.*** at 42. The ***Muthler*** Court reasoned that Regions did not fulfill the requirements for reforming the mortgage loan to bind Susan, and "Susan Muthler is entitled to take the property free and clear of any encumbrance[,]" *i.e.*, the mortgage loan. ***Id.***; ***accord*** 21 Standard Pa. Practice 2d § 116:8 (summarizing ***Muthler*** holding as, "A wife was entitled to take property titled in both the husband's and wife's names free and clear

of any encumbrance upon the husband's death . . . where the wife was never a signatory to the mortgage").

Instantly, similar to the wife in **Muthler**, who did not sign the mortgage, Langton did not sign the instant listing contract. **See Muthler**, 889 A.2d at 42. In both this case and **Muthler**, the husband died, each passing the property to his wife via the right of survivorship inherent in a tenancy by the entireties. **See id.**; **Clingerman**, 519 A.2d at 380-81. Regions' position mirrors Brokers', in that both wished to bind the wife to a contract signed only by the now-deceased husband. **See Muthler**, 889 A.2d at 42. As our Supreme Court held in **Muthler**, we similarly hold that Langton "is entitled to take the property free and clear of any encumbrance[,]" *i.e.*, the listing contract, which required the owner to convey title of the property to the purchaser. **Id.** We thus affirm the trial court, albeit on other grounds.[3] **See Donnelly**, 720 A.2d at 454.

We summarize Brokers' last argument. Brokers contend they are entitled to sales commissions pursuant to a theory of unjust enrichment. We hold Brokers are entitled to limited relief.

We set forth the following principles:

> A claim for unjust enrichment arises from a quasi-contract. A quasi-contract imposes a duty, not as a result of any agreement, whether express or implied, **but in spite of**

---

[3] The trial court construed the listing contract and held that Langton did not have to pay Brokers any commission. **See** Trial Ct. Op. at 6-8.

> **the absence of an agreement**, when one party receives unjust enrichment at the expense of another.
>
> The elements of unjust enrichment are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value. Whether the doctrine applies depends on the unique factual circumstances of each case. In determining if the doctrine applies, we focus not on the intention of the parties, but rather on whether the defendant has been unjustly enriched.
>
> Moreover, the most significant element of the doctrine is whether the enrichment of the defendant is unjust. The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff.

*Stoeckinger v. Presidential Fin. Corp. of Del. Valley*, 948 A.2d 828, 833 (Pa. Super. 2008) (emphasis added and citations omitted); *Lackner v. Glosser*, 892 A.2d 21, 34 (Pa. Super. 2006) ("By its nature, the doctrine of quasi-contract, or unjust enrichment, is inapplicable where a written or express contract exists.").

Instantly, Langton did not sign the instant listing contract. Thus, because an agreement does not exist between Brokers and Langton, the doctrine of unjust enrichment applies. *See Stoeckinger*, 948 A.2d at 833; *Lackner*, 892 A.2d at 34. The trial court, however, did not explain its reasons for holding Langton was not entitled to relief based on unjust enrichment. Thus, we vacate the order to the extent the trial court denied relief on Brokers' unjust enrichment claim, and remand for the trial court to explain its reasons for granting or denying relief.

Having resolved Brokers' appeal, we address the issue raised in Langton's cross-appeal:

> Is . . . Langton entitled to judgment in her favor . . . on her counterclaim for rental commissions withheld by [Brokers] since rental commissions were specifically excluded?

Langton's Brief at 3.

Langton contends that she signed a lease with American Industry Felt & Supply, which contained a clause providing for "no leasing commission." She claims Brokers—despite the existence of such a clause—improperly withheld leasing, *i.e.*, rental, commissions. *Id.* at 27-28. Langton bolsters her argument by referencing an addendum to an agreement of sale that allegedly did not provide for rental commissions. *Id.* at 28. Brokers counter that they signed neither the lease with American Industry Felt & Supply nor the addendum, and thus, could not be bound by any alleged "no leasing commission" clause. Brokers' Reply Brief at 1. We hold Langton is due no relief based on this argument.[4]

In this case, the Brokers never signed the lease or the addendum, or otherwise evinced acceptance or intent to be bound to the aforementioned. *See generally Ingrassia Const. Co. v. Walsh*, 486 A.2d 478, 482-83 (Pa. Super. 1984) (discussing contract formation). Thus, Brokers would not be contractually obligated to forego any lease commission. *See id.* We

---

[4] We cannot reverse on an argument not raised by the parties.

reiterate that Langton raised no other argument for reversing the trial court. *See generally Berman v. Radnor Rolls, Inc.*, 542 A.2d 525, 529-30 (Pa. Super. 1988) (holding failure to raise argument results in waiver). Accordingly, we affirm in part, vacate in part, and remand for further proceedings.

Order affirmed in part and vacated in part. Case remanded for further proceedings. Jurisdiction relinquished.

President Judge Emeritus Bender concurs in the result.

Judge Olson concurs in the result.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/17/2015

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA

CIVIL DIVISION-LAW

JANET L. RYAN REALTY, INC.,
t/d/b/a CENTURY 21-AMERICAN
HERITAGE REALTY and BEYNON &
COMPANY, INCORPORATED,

PLAINTIFFS,

VS.                                    NO. 562 OF 2012

SANDRA LANGTON,

DEFENDANT.

## DECISION AND ORDER

This case is before me on motions for summary judgment
filed by the plaintiffs and the defendant.  The defendant,
Sandra Langton, ("Sandra") and her husband, Steven E.
Langton, were the owners of a building in New Kensington,
Westmoreland County, Pennsylvania (the "Property") as
tenants by the entireties.  On February 12, 2009, Mr.
Langton, without joinder of his spouse, executed a listing
contract with the defendant, Janet L Ryan Realty, Inc.
t/d/b/a Century 21-American Heritage Realty ("Century 21"),
using the agency's pre-printed Commercial Listing Contract.
Although Sandra did not execute this listing agreement, she
testified at her deposition that she was aware of and in
agreement with it.  The listing contract gave Century 21
the exclusive right to sell the Property for a term of one

1

year commencing on February 12, 2009, and terminated the contract at the expiration of the said one year listing period. The contract also provided that the agreement may be terminated at any time after 183 days have elapsed from the commencement date by the owner giving ten days notice in writing delivered to the broker by certified mail with return receipt requested. The contract provided for a sales and/or leasing commission of 8 1/3 percent.

Unfortunately, Steven Langton died on February 17, 2009. At no time did Century 21 procure Sandra's signature on any listing agreement although the original agreement executed by her husband did indicate that it was binding upon his "heirs, executors, administrators, successors and assigns". Technically, Ms. Langton would not be an heir or successor of Mr. Langton since she was a tenant by the entireties at the time the original listing agreement was signed.

Century 21 did obtain a buyer for the property and Sandra entered into an agreement of sale with an entity called American Industrial Felt and Supply Corporation ("AIF"). This sales agreement was dated April 6, 2009, and listed Century 21 as the listing broker and the plaintiff, Beynon & Company as the selling broker. AIF is a corporation owned entirely by Patricia Dent and the

2

agreement was executed by its president, Michael Dent, the son of Patricia Dent. The sales agreement provided that the closing was to take place on or before 20 days after the inspection period which itself was to expire 120 days after April 6, 2009, or on October 3, 2009. Accordingly, the last date for the closing would have been October 23, 2009.

On the same date as the sale agreement, the parties executed a lease which permitted AIF to take possession of the Property for a monthly rental of $4,000.00. The term of the lease was from April 1, 2009, to September 1, 2009, Paragraph 17 of this lease agreement provided that the commissions are "N/A".

When AIF had trouble obtaining financing for its purchase of the Property, Century 21 prepared an Addendum/Endorsement to the agreement of sale extending the time period for which AIF could obtain mortgage approval to January 3, 2010, and the date for settlement to on or before January 23, 2010. It also indicated that AIF would continue to lease the property beginning October 3, 2009, until the date of settlement at an increased rental of $6,000.00 per month and that the Broker's fee "on both the Lease & Sale will remain at 8 1/3 percent, to be split

3

equally between the Brokers".  This Addendum/Endorsement was executed by the parties on October 1, 2009.

The sale to AIF failed to close by January 23, 2010, apparently because the corporation was never able to secure mortgage financing.  By documents generated by AIF and executed February 8, 2010, and effective February 8, 2010, and February 28, 2010, AIF and Sandra terminated the Agreement of Sale and the Lease.

As set forth in the original listing contract, its term automatically expired on February 12, 2010.  However, the listing agreement contained a clause that stated:

"If within one year of the termination of this agreement, the Owner enters into an Agreement of Sale, or transfers/exchanges the property with any person to whom the property was shown, presented or submitted by the Broker, the sale or transfer shall be conclusively presumed to have been made by the Broker and the commission shall be paid by Owner to Broker."

This one year period would have expired on February 12, 2011.  Shortly after that date, on April 5, 2011, the Property was sold to an entity listed on the deed of record as Dent Properties.[1]  Dent Properties is a completely separate entity from AIF but is owned in equal shares by Michael Dent, the president of AIF; his mother,

---

[1] The complaint avers that the Buyer is Dent Holdings LLC.  The deed of record indicates that the buyer was Dent Properties, LLC.  Michael Dent in his deposition explained that Dent Properties was the incorrect name of the company and that the Property was acquired by Dent Holdings LLC. For purposes of this opinion, I will refer to this entity simply as Dent Properties.

4

Patricia Dent; and Robert Dent, the father of Michael Dent and spouse of Patricia Dent. Michael Dent signed the agreement of sale on behalf of AIF. He also executed the following documents all on behalf of Dent Properties:

1. The deed to Dent Properties dated April 5, 2011; and

2. The mortgage from Dent Properties to Sandra also dated April 5, 2011. The acknowledgment of this mortgage indicates that he was signing as president of Dent Properties and, along with Patricia J. Dent and Robert Dent, the mortgage note dated April 5, 2011.[2]

Despite a demand to do so, Sandra refused to pay commissions to these plaintiffs and suit was filed against her to recover a leasing commission of $6,500 and a sales commission of $35,416.00. Ms. Langton has filed a counterclaim requesting repayment of the rental commissions withheld by the plaintiffs from rental payments received ($2,500.00). As stated above, the plaintiffs and Sandra have filed motions for summary judgment.

---

[2] It is interesting to note that the sales agreements between Sandra and Dent Properties was dated April 5, 2011, the same date as the closing of the sale of the Property.

Regardless of which date I determine the listing agreement to be cancelled, i.e., September 17, 2009, or February 12, 2010, the plaintiffs argue that they are entitled to their commission even though the sale to Dent Properties occurred more than one year after the termination date.[3] The plaintiffs contend that the sale to Dent Properties was in fact a sale to "any person to whom the property was shown, presented or submitted by the broker…". The plaintiffs would have me conclude as a matter of law that the "person" referred to in this section of the listing agreement was in fact Michael Dent, the president of AIF, and the president and part owner of Dent Properties. Since the sale to Dent Properties took place more than one year after the listing agreement was terminated, I cannot "conclusively presume"[4] that the sale to Dent Properties was made by these Brokers and that the commission should be paid by Sandra to these Brokers. Nevertheless, the plaintiffs argue that I should still find

---

[3]Sandra at her deposition sent a certified mail notice on September 18, 2009 to Century 21 which was acknowledged to be received by Dave Allen of Century 21 at his deposition. The notice advised Mr. Allen that Ms. Langton would like to terminate her listing contract with Century 21. Therefore, it is possible to conclude that the listing agreement was terminated on September 17, 2009, and even if not so terminated, would have terminated automatically on February 12, 2010.

[4] As a footnote, I am not sure of the legal definition of a "conclusive presumption".

6

that they are entitled to the commission even without the conclusive presumption.

For me to make a finding as a matter of law that the above-referred to claim is enforceable beyond the one year period would result in my condoning a violation of the Real Estate Licensing and Registration Act 63 P.S.§455.101 et. seq. ("RELRA"). This is because, as the Superior Court had noted in its opinion in Salove Company v. Enrico Partners, L.P., 2011 Pa. Super. 128 23 A.3d 1066 (2011), that the RELRA provides for suspension or revocation of a broker's license if they fail to specify a definite termination date in a listing contract 63 P.S.§455.604 (a)(10).

The plaintiffs argue that there was a specific termination date in the listing contract, i.e., the one year automatic termination period referred to above. Therefore, they argue that there is no violation of the Act. They argue that the only indefinite period would be that which would apply if the Property was sold to the same person it was shown to while listing was in force. I cannot agree. If I were to follow the plaintiffs' logic then, as argued by Sandra in her brief and at oral argument, many years could have passed and if the Property was sold to Michael Dent or any entity he was involved in, then these real estate agents would be entitled to a commission

7

because they showed the property to Michael Dent during the term of their listing agreement. Thus, the effect of such a clause is to cause the listing contract to fail to have a definite termination date. Furthermore, the listing contract was prepared by Century 21 and therefore should be construed more strictly against Century 21.

Century 21 had the power to include specific language controlling this type of situation. I am not even sure that the words "any person to whom the property was shown…" would apply to the two entities in this case, AIF and Dent Properties, since they do not have complete common ownership. However, based on my determination that the referred to clause is not enforceable because it violates RELRA, I do not have to make the determination that Dent Properties is, in fact, the same "person" as AIF.

The final matter for determination is whether or not the plaintiffs are entitled to the balance of their commissions they claim are due from the rental payments or conversely whether Ms. Langton is entitled to a $2,500 judgment representing a "refund" for the commissions already withheld from rental payments made by AIF during the term of its occupancy of the Property. The listing contract provides as follows:

8

"In the event that the Property herein listed shall be leased during the term of this contract by the Broker or by the Owner or any other person, the Owner agrees to pay Broker a commission of 8 1/3 percent of the gross lease value. This commission shall be earned and payable in full at the time of the signing of the lease or concurrent w/ lease fees. In the event this listing is placed under lease and the property is subsequently sold to the tenant during the term of the lease or any renewal, then the agreed commission shall be due broker."

There is no question that AIF occupied the Property and made rental payments to Sandra. There is no question that the listing contract provided for the above-stated lease commission payment. This commission language was in addition to the 8 1/3 percent sales commission language that was included in the same paragraph directly prior to the lease commission language. There is also no question that the sum of $2,500.00 was withheld from the rental payments and not paid to Ms. Langton apparently without objection from her.[5]

Accordingly, I will enter the following Order:

---

[5] Sandra argues in her brief that she never acquiesced in plaintiffs receiving rent and withholding a rental commission based upon her note dated on or about April 26, 2010, when she asked her attorney, James Irwin, "will I still need to give rent $ to Dave & RT". I do not agree that this note is evidence that Ms. Langton never "acquiesced" in the withholding of rental commissions especially when the note was written in April 2010 and AIF first occupied her Property on April 1, 2009.

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA

CIVIL DIVISION-LAW

JANET L. RYAN REALTY, INC.,
t/d/b/a CENTURY 21-AMERICAN
HERITAGE REALTY and BEYNON &
COMPANY, INCORPORATED,

PLAINTIFFS,

VS.                                    NO. 562 OF 2012

SANDRA LANGTON,

DEFENDANT.

## ORDER OF COURT

AND NOW, this 25th day of November 2013, it is hereby

ORDERED and DECREED that the plaintiffs' and defendant's

motions for summary judgment are sustained in part and

denied in part.  The defendant's counterclaim is hereby

dismissed with prejudice.  Counts 2 and 3 of the

plaintiffs' complaint are dismissed.  A judgment is entered

on behalf of the plaintiffs and against the defendant,

Sandra Langton, in the amount $6,500.00 together with costs

on Count 1.

                                    BY THE COURT:

                                    _____
                                    GARY P. CARUSO,
                                    PRESIDENT JUDGE           ATTEST:
                                                     CHRISTINA O'BRIEN
                                                       PROTHONOTARY

CERTIFICATE OF SERVICE
AND NOW, this 25th day of November
20 13, I do hereby certify that I have sent a copy of
this document to:

_____
_____

ANITA M. VIVIO, SECRETARY

10