**Sigman v. Bochetto & Lentz, P.C.**

*Brian S. Chacker*, for plaintiff.

*John A. O'Connell, Jeffrey W. Ogren, George Bochetto* and *David P. Heim*, for defendants.

GLAZER, *J.*, June 12, 2015—

### ORDER

AND NOW, this 12 day of June 2015, upon consideration of defendants' Emergency Motion to Stay Proceedings (Control Number 15052372) and Emergency Motion to Set Aside All Garnishments, All Execution Process and to Mark Judgment Satisfied (Control Number 15052569), plaintiff's responses in opposition, and after oral argument and upon consideration of plaintiff's Motion for Judgment on the Pleadings (Control Number 15050061), defendants' response in opposition and after oral argument, it hereby is ORDERED as follows:

1. The Motion to Stay Proceedings and Miscellaneous Motion are Moot.[1]

2. The Motion for Judgment on the Pleadings is Granted and defendants' counterclaim is dismissed.

Presently pending before the court is Sigman's Motion for Judgment on the Pleadings. On June 27, 2011, Sigman initiated the instant lawsuit by complaint. On July 26, 2011, an amended complaint was filed alleging claims for breach of contract, unjust enrichment and accounting for B&L's failure to make payments owed to Sigman pursuant to an employment termination agreement. The employment termination agreement confirmed certain agreements related to referral fees for work generated by Sigman while employed by B&L and for certain post employment matters. The employment termination agreement contained an arbitration provision which provided as follows, "In the event the parties have any dispute or disagreement, they shall submit same to Harris Bock for final and binding arbitration."[2] B&L filed preliminary objections to the amended complaint seeking to transfer the matter to arbitration. On August 22, 2011, the court sustained B&L's preliminary objections and remanded only those claims filed against B&L to binding arbitration. The remainder of the case, the claims against the individual defendants, George Bochetto and Gavin Lentz, was stayed and all other preliminary objections asserted against Bochetto and Lentz individually, were held under advisement until the final and binding mediation was completed.[3]

---

1. On June 11, 2015, the attachment dissolved and the judgment was marked satisfied.

2. Employment Termination Agreement ¶ 9.

3. *See* this court's order and opinion dated August 22, 2011 (As

During the arbitration proceeding, B&L submitted a counterclaim to the arbitrator. The counterclaim included a claim of indemnity for attorney fees related to investigation and reporting Sigman's conduct to the Disciplinary Board. B&L requested the reimbursement of $132,259.70 which represented the attorneys' fees expended in the disciplinary matter ("disciplinary attorneys' fees").[4] On June 19, 2013, after conducting discovery and hearings, the arbitrator entered an interlocutory order of mixed findings of fact and conclusions of law. In particular to the disciplinary attorneys' fees, the arbitrator found the following:

*Disciplinary Actions*

75. Defendant is seeking to recover $132,259.70 for in house attorney's fees ($69,590.00), as well as for outside counsel costs ($62,669.70).

76. The arbitrator finds that the fees with respect to the disciplinary matter are outside the scope of the Termination Agreement and are denied.[5]

The arbitrator ultimately entered an award in favor of Sigman and against B&L in the amount of $123,942.93.[6]

---

for the remaining defendants, Bochetto and Lentz, since they are not signatories to the termination agreement, a valid arbitration does not exist with Sigman. Consequently, the instant action shall be stayed and the remaining preliminary objections shall be held under advisement pending the completion of the final and binding arbitration). As of the writing of this opinion, Sigman filed a praecipe to dismiss the claims against Bochetto and Lentz individually.

4. B&L counterclaim submitted to Arbitrator Bock on December 2, 2011.

5. Interlocutory Mixed Findings of Fact, Conclusions of Law, and Interlocutory Order dated June 19, 2013- Exhibit "A" to Plaintiff's response to Defendant's Motion for Judgment on the Pleadings.

6. This award which was reduced to judgment was the subject of various emergency motions to stay execution and garnishment. These motions are moot since the judgment has been marked satisfied.

On July 2, 2013, B&L filed a petition to vacate the arbitrator's award with this court relying upon public policy. On August 6, 2013, the court denied defendants' petition to vacate and B&L appealed. On June 19, 2014, the Superior Court affirmed the court's order denying the petition to vacate. Thereafter, B&L filed a petition for re-hearing *en banc* and petition for allowance of appeal which were also denied.

After the arbitrator issued his final order, B&L filed a motion in this court to lift the stay in this action in order to proceed with the remaining claims. On August 5, 2013, the court executed the proposed order submitted by B&L and granted the motion to lift the stay.[7] On July 19, 2013, B&L filed an answer with new matter and counterclaim alleging contractual indemnity and equitable indemnity for the disciplinary attorneys' fees. Preliminary objections were filed by Sigman which were overruled. An appeal was filed to the Superior Court which was quashed. Now, Sigman filed a motion for judgment on the pleadings seeking to dismiss the counterclaim based on *res judicata* and collateral estoppel.

## DISCUSSION

The motion for judgment on the pleadings presents two issues for this court's consideration, whether B&L's

---

7. The proposed order submitted by B&L and executed by the court, contained an error. The order provided in part as follows: "ORDERED that the Court shall consider the preliminary objections and claims concerning the $132,259.70 found to be beyond the scope of the arbitration concluded on June 19, 2013." This language misstated the arbitrator's finding and conclusion. The arbitrator did not find or conclude that the $132,259.70 was beyond the scope of the Arbitration Agreement. Instead, the arbitrator found and concluded that the $132,259.70 was beyond the scope of the Termination Agreement and denied the request.

counterclaim in this action is barred by the doctrine of *res judicata* or collateral estoppel since the issues were fully litigated in the arbitration proceeding and in the alternative whether B&L's counterclaim should be transferred to binding arbitration before Harris Bock, Esquire. B&L argues that the counterclaims are not barred by the doctrine of *res judicata* since this court has already ruled that the counterclaim, specifically the disciplinary attorneys' fee, was outside the scope of the arbitration proceeding. Additionally, B&L argues that Sigman has waived his right to assert that the counterclaims are subject to arbitration. For the reasons discussed below, the court finds that B&L's counterclaims are barred by the doctrine of *res judicata*.

Under the doctrine of *res judicata*, when an issue of fact or of law is actually litigated and determined by a valid final judgment, and determination of the issue was essential to judgment, the determination on that issue is conclusive in a subsequent action between the parties, whether on the same or a different claim. Barring said claims serves the twin purposes of protecting litigants from assuming the burden of re-litigating the same issue with the same party, and promoting judicial economy through preventing needless litigation.[8] Application of the doctrine of *res judicata* as an absolute bar to a subsequent action requires that the two actions possess the following common elements: "(1) identity of the thing sued upon; (2) identity of the cause of action; (3) identity of the parties; and (4) identity of the capacity of the parties."[9] "[A]ll matters which might

---

8. *Stoeckinger v. Presidential Fin. Corp. of Delaware Valley*, 948 A.2d 828, 832 (2008).

9. *Id.* at 832 (2008), citing *Dempsey v. Cessna Aircraft Co.*, 439 Pa. Super. 172, 653 A.2d 679, 681 (1995) (*en banc*).

have been raised and decided in the former suit, as well as those which were actually raised therein, are *res judicata* in a subsequent proceeding between the same parties and their privies."[10] In determining whether *res judicata* should apply, a court may consider whether the factual allegations of both actions are the same, whether the same evidence is necessary to prove each action and whether both actions seek compensation for the same damages.[11]

Applying the foregoing principles to the case at hand, it is clear that *res judicata* applies. The elements of identity of the parties and identity of the capacity of the parties are easily resolved. The party asserting the counterclaim and the party against whom the counterclaim was asserted are the same. B&L has asserted a counterclaim in this action as well as in the arbitration proceeding. Moreover, B&L asserted the counterclaim in this action and in the arbitration proceeding against Sigman. Hence, the element of identity of the parties is satisfied. Similarly, identity of capacity of the parties also exists. In the counterclaim asserted here as well as in the arbitration proceeding, B&L and Sigman are the respective plaintiff and defendant. Sigman is the former employee seeking payment of referral fees, while B&L is the employer required to pay the referral fee.

Further, review of the counterclaim filed in this action as well as the counterclaim submitted in the arbitration proceeding show that the elements for identity of the thing sued upon as well as the identity of the cause of action are also satisfied. The counterclaim submitted by B&L in the arbitration proceeding stated the following:

10. *Hopewell Estates, Inc. v. Kent*, 435 Pa. Super. 471, 476, 646 A.2d 1192, 1194 (1994).
11. *Id.*

223. Once B&L unraveled the full scope of Sigman's fraudulent and deceitful conduct as outlined above, it was compelled under the Rules of Professional Conduct to report Sigman's unethical conduct to Disciplinary Counsel for the Pennsylvania and New Jersey Bars.

224. In doing so, B&L was required to prepare numerous writings to the Disciplinary Boards detailing Sigman's unethical conduct, which included cross references to voluminous documents providing Sigman's ethical violations.

225. B&L further had to meet and confer with Disciplinary Counsel on numerous occasions concerning Disciplinary Counsel's investigation of Sigman's ethical violations.

226. To date, B&L attorneys have already spent $61,944 worth of billable attorney time in connection with investigating and reporting Sigman's ethical violations to disciplinary counsel.

227. B&L also had to engage special ethics counsel, James Schwartzman, Esquire, who provided consultation and advice in connection with B&L's obligations under the Rules of Professional Conduct to report Sigman's ethical violations.

228. Mr. Schwartzman also formally represented B&L in the Pennsylvania Disciplinary Action where Sigman attempted to serve the firm and several of its employees with oppressive subpoenas seeking voluminous documents, including Mr. Bochetto's and Mr. Lentz's personal income tax returns.

229. Mr. Schwartzman has also been retained to defend at least four frivolous disciplinary complaints filed by Sigman against George Bochetto in Pennsylvania, New York, the District of Columbia and New Jersey. (Although none of the jurisdictions have elected to proceed with charges based on Sigman's frivolous ethical complaints, each required Mr. Bochetto to respond to Sigman's allegations.)

230. To date, B&L has pad (sic) Mr. Swartzman's firm a total of $52,376.81 in fees for Mr. Schwartzman's services in connection with Sigman's ethical violations and defending against Sigman's frivolous ethical complaints against Mr. Bochetto.

B&L submitted twenty six (26) paragraphs in their proposed conclusions of law addressing the recovery of the disciplinary attorneys' fee. Included within the conclusions of law are allegations specifically detailing the source for the disciplinary attorneys' fee. Specifically, B&L restated its request for in-house (non-partner) attorneys' fees of $69,590.00, ethics counsel legal fees in an amount of $62,669.70 and forensic computer services costs of $5,192.82. In total, B&L requested an award in an amount of $137,452.52. The arbitrator awarded B&L $5,192.82 for the claimed forensic computer services. Once the $5,192.82 is subtracted for the total requested, the remaining sum for attorneys' fees related to the disciplinary actions was $132,259.70. The arbitrator specifically denied B&L's request for $132,259.70, the sum related to the disciplinary attorneys' fee. The arbitrator's finding which is now final and binding provided as follows:

*Disciplinary Actions*

75. Defendant is seeking to recover $132,259.70 for in house attorney's fees ($69,590.00), as well as for outside counsel costs ($62,669.70).

76. The arbitrator finds that the fees with respect to the disciplinary matter are outside the scope of the Termination Agreement and are denied.[12]

Despite the clear language of the arbitrator's finding that the disciplinary matter is outside the scope of the Termination Agreement, B&L argues that a "final valid judgment upon the merits" is lacking because the arbitrator found that the counterclaim was not within the scope of the arbitration. The court does not find the phrase "outside the scope of the Termination Agreement" synonymous with "beyond the scope of the arbitration." This court was tasked with determining whether the dispute involved is within the scope of the arbitration provision and determined that any disputes concerning the termination agreement fall within the scope arbitration.[13] As such, the issue of the disciplinary attorneys' fee was submitted to the arbitrator and adjudicated by him.[14]

Disappointed with the arbitrators' finding and frustrated with its inability to vacate the award, B&L now attempts to

---

12. Interlocutory Mixed Findings of Fact, Conclusions of Law, and Interlocutory Order dated June 19, 2013- Exhibit "A" to plaintiffs response to defendant's motion for judgment on the pleadings.

13. *See, Midmo Co., Inc. v. Presbyterian Hous. Dev. Co.*, 739 A.2d 180,186 (Pa. Super. 1999).

14. The court is also not persuaded by B&L's reliance upon the August 5, 2013 order to support its position that the disciplinary attorneys' fee was beyond the scope of the arbitration and therefore not fully adjudicated. As discussed in footnote 3, *supra*, the language contained in said order referencing "beyond the scope of arbitration" is erroneous.

litigate once again the same claim for attorney fees which was denied in the arbitration proceedings. B&L filed a counterclaim for contractual indemnification against Sigman which provided as follows:

> 83. Sigman's agreement to indemnify and hold B&L harmless includes Sigman's obligations to reimburse B&L for the costs and legal fees (totaling $132,259.70 at the present time) incurred in investigating, reporting and addressing all of Sigman's misdeeds.

> 84. Sigman is in breach of his contractual obligations to indemnify and hold B&L harmless for $132,259.70, which arose directly from Sigman's "past acts, conduct or practices."

> 85. As a direct and proximate result of Sigman's breach of his obligations to indemnify and hold B&L harmless, B&L has suffered substantial pecuniary harm, including, but not limited to $132,259.70.[15]

Additionally, B&L filed a counterclaim for equitable indemnification seeking indemnification for the disciplinary attorneys' fee. The counterclaim for equitable indemnification provides in part as follows:

> 88. Sigman grossly violated his fiduciary duty to B&L by committing serious ethical breaches, stealing B&L's clients, lying to B&L concerning material matters, refusing to testify truthfully concerning his behavior, and attempting to destroy the evidence of this wrongdoings, as amply demonstrated in his acceptance of discipline. Ex A., *passim*.[16]

---

15. B&L Answer with New Matter and Counterclaim.
16. Exhibit A is the Termination Agreement.

89. Sigman was primarily responsible for the harm that accrued to B&L for his improper, illegal and unethical actions.

90. The harm that accrued to B&L from Sigman's actions was at least $132,259.70, due to the necessary expenses of investigating, reporting, and addressing Sigman's actions.

91. Sigman's primary responsibility for the costs B&L incurred due to his improper, illegal, and unethical actions, see Exhibit A, requires Sigman to indemnify B&L for those expenses, fees and costs.[17]

B&L's counterclaim here is identical to the counterclaim submitted to the arbitrator in substance and amount claimed. In the Termination Agreement, the parties agreed to submit "any and all disputes" to binding common law arbitration pursuant to 42 Pa. C. S. § 7341 before the arbitrator.[18] The arbitrator considered the submissions of B&L regarding the disciplinary attorneys' fee and found that the request was outside the scope of the Termination Agreement and denied the request. The disciplinary attorneys' fee was considered and rejected. B&L had a full and fair opportunity to litigate the claim for disciplinary attorneys' fees in the arbitration proceeding. Disappointment with the outcome does not give leave to litigate once again that which has been fully resolved. Since, all the requirements of *res judicata* have been met, the counterclaim for the disciplinary attorneys' fee is barred and the counterclaim is dismissed.

---

17. During oral argument, B&L argued that the claim of equitable indemnification survives the arbitration. However, said claim specifically references the Termination Agreement for support, mirrors the claim for contractual indemnity and was fully adjudicated by the arbitrator.

18. Exhibit F to Sigman's Reply to New Matter and Answer to B&L counterclaim — Arbitrator's Findings of Fact and Conclusions of Law.

## CONCLUSION

For the reasons discussed above, plaintiff's Motion for Judgment on the Pleadings is granted and the counterclaim is dismissed.